UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL CASE NO. 3:18-CR-623-S |
| § | |
| RICHARD SCOTT HALL (1) § | |
| SCOTT SCHUSTER (2) § | |
| DUSTIN RALL (3) § | |
| JOHNATHAN LE (4) § | |
| GEORGE LOCK PARET (5) § | |
| TURNER LUKE ZEUTZIUS (6) § | |
| QUINTAN COCKERELL (7) § | |
| MICHAEL RANELLE (8) § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the *Government's Motion to Clarify Order Limiting Disclosure of Search Warrant Materials*, Doc. 253. The Government "seek[s] to clarify the oral orders and minute entries [of the undersigned] on April 24, 2019 and September 23, 2019, limiting disclosure of the search warrant materials." Doc. 253 at 1. Responses and replies have been filed, and the motion is ripe for consideration. The Government's Motion for Clarification is **GRANTED**, and the following memorializes and, to the extent necessary, clarifies the Court's previous orders with respect to the Government's *Motion for Entry of Order Under FED. R. EVID. 502(d) and in Accordance with FED. R. CRIM. P. 16*, Doc. 117, (the "Government's Underlying Motion").

    A. **BACKGROUND**

On September 8, 2016, a magistrate judge of this Court issued a warrant authorizing the search of a premises located in the 1000 block of Weatherford Street, in Fort Worth, Texas,

which housed businesses, including Xpress Pharmacy. By way of incorporated attachments, the warrant specified the evidence that was permitted to be seized as a result of the search and, as relevant here, authorized the agents "to seize the computers and/or storage media and make a mirror image of the computers and/or storage media off-site *for the purposes of searching*." 3:16-MJ-713-BF; Dkt. 1 at 8 (emphasis added). Within a few days of the execution of the search warrant, an attorney representing Xpress Pharmacy claimed that some information confiscated from its servers during the execution of the search warrant was protected from disclosure by attorney-client privilege or as attorney work product.[1] Doc. 117 at 2. In response to the notice, the Government's counsel agreed to employ a filter team[2] to utilize its own search terms and those provided by pharmacy and defense counsel in an attempt to identify and segregate potentially privileged/protected material. Apparently, the Government did just that, resulting in some seized items being segregated (the "Segregated Materials") as potentially protected from disclosure by attorney-client privilege or as work product. Doc. 117 at 2.

---

[1] Counsel for Defendants Hall, Schuster, and Rall contend that the written notice submitted by pharmacy counsel also attached their correspondence asserting these Defendants' personal privilege as well.

[2] As the Court understands it, and the Government essentially confirms, Doc. 253 at 8, a filter team is comprised of individuals not involved in the investigation or prosecution of the case who are tasked with reviewing seized materials and segregating any material for which seizure is not authorized, or that may be privileged or otherwise protected, to prevent its disclosure to those who are directly involved in the investigation and/or prosecution. This is to prevent the investigation or prosecution from being inadvertently "tainted" by information to which the investigators or prosecutors on the case should not be privy. It logically follows that if there were there no concern that a representative or counsel for the Government might consciously or subconsciously make use of privileged information inadvertently revealed, there would be no need for such a process.

Subsequently, on December 12, 2018, an indictment was filed in this case charging Defendants with, *inter alia*, conspiracy to defraud the government and receive kickbacks as well as money laundering, all stemming from allegations that they defrauded federal health care programs by submitting false claims for reimbursement through the pharmacies they operated. Doc. 1, *passim*.[3] In connection with its discovery obligations in this case, the Government later filed the Government's Underlying Motion, which was referred to the undersigned United States magistrate judge for a hearing, if necessary, and determination. Doc. 117; Doc. 119.

The Government's Underlying Motion requested that due to the large volume of documents collected during the investigation of this case, the Court enter an order under Rule 502(d) "that would allow it to meet its constitutionally imposed discovery obligations by permitting the government filter team to produce electronically stored information in its possession to all Defendants." Doc. 117 at 1. Specifically, the Government contended that such an order was necessary for it to comply with its obligation under "Federal Rule of Criminal Procedure 16 . . . to produce any item within its possession, custody, or control that is material to preparing a defendant's defense" and its "additional obligation to turn over any evidence 'material either to guilt or to punishment,' *Brady v. Maryland*, 373 U.S. 83, 87 (1963), including any evidence that brings into question the reliability of a witness, *Giglio v. United States*, 405 U.S. 150, 154, 155 (1972)." Doc. 117 at 3. The Government also averred that it "intend[ed] to electronically produce all seized hard copy, which the Government scanned, and electronic evidence to make it more accessible to Defendants." Doc. 117 at 2. In essence, the Government sought an order that would permit it to produce to all parties all electronic materials in the

---

[3] A Superseding Indictment was filed on May 13, 2020, charging essentially the same offenses. Doc. 229

3

possession of its filter team, including the Segregated Materials, that "attorneys for the pharmacy involved in this matter raised attorney-client privilege concerns as to the contents of." Doc. 117 at 2. Defendants Hall, Rall, and Schuster (the pharmacy principals) objected, *inter alia*, to the Government releasing any seized documents over which Defendants Hall, Rall, and Schuster held an attorney-client privilege or that were protected under the attorney work-product doctrine. Doc. Doc. 120 at 6-10.

On April 24, 2019, a hearing was held, at which the Court announced its ruling on the record granting and denying in part the Government's Underlying Motion.[4] Doc. 131. The Court held, *inter alia*, that while the Government was entitled to a Rule 502(d) protective order over materials to which it held a privilege, it was not entitled to the Rule 502(d) protective order it requested for documents seized pursuant to a search warrant for which the objecting Defendants held the privilege. The Court also concluded that the Government had no right to use or disclose materials confiscated during the execution of the September 2016 search warrant that the warrant did not specifically authorize it to seize. As later memorialized in an electronic order, the Court ordered the Government:

> …to return any evidence seized pursuant to search warrant(s) executed more than two years ago for which the Government, through subsequent review and utilization of a filter team, has determined (1) was not authorized for seizure under the parameters of the search warrant(s) and/or (2) is protected from disclosure by privilege or other legal protection.

Doc. 132.

---

4 A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense. The magistrate judge must promptly conduct the required proceedings and, when appropriate, enter on the record an oral *or* written order stating the determination. FED. R. CRIM. P. 59 (emphasis added).

Later, on September 23, 2019, at a hearing on the Government's *Motion for Reconsideration*, the Court determined that it had improvidently ordered, *sua sponte*, the return of property, since Defendants had not moved for such relief and, consequently, the Government had not been given proper notice and opportunity to respond. Doc. 193. The Court thus modified the order to instead prohibit the Government from "making use of or distributing" the material initially ordered returned. Doc. 193 at 15; Doc. 193 at 28-29.

The instant motion for clarification followed nearly a year later.

## B. ANALYSIS

To a large degree, any confusion here is of the parties' making. They all agree and recount the identical language and substance of the Court's previous rulings. For the sake of clarification, however, it might be helpful to first state the basis for those rulings.

*1. Protective order permitting disclosure of privileged materials*

At first blush, the purpose for the relief requested by the Government's Underlying Motion appeared benign enough—to release to Defendants all evidence previously seized from Defendants. Except the Government proposed to produce to *all* Defendants materials over which only *some* Defendants asserted a privilege or other protection from disclosure. At the heart of the undersigned's ruling denying the Government's request is the Court's finding that the application of Rule 502(d) is limited to those privileged and protected materials *disclosed*, inadvertently or purposefully, by the actual holder of the privilege and protection.

The rule provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." FED. R. EVID. 502(d). Here, however, the Government sought to disclose—ostensibly under the protection of Rule

502(d)—the privileged materials of other parties, when those parties never voluntarily or even inadvertently disclosed them to the Government in the first instance. The plain language "not waived by disclosure," when read in conjunction with the other provisions of Rule 502, clearly contemplates the protection of material disclosed by the privilege holder and is not intended to provide cover for another's intentional disclosure—especially over the objection of the privilege holder.

The Court is mindful that Rule 502 was promulgated, in part, to ease burdens associated with producing large amounts of electronic data in connection with discovery obligations. Indeed, as outlined in the Advisory Committee Notes to Rule 502(b):

> [Subdivision (b)] responds to the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information. This concern is especially troubling in cases involving electronic discovery. *See, e.g.*, *Hopson v. City of Baltimore*, 232 F.R.D. 228, 244 (D. Md. 2005) (electronic discovery may encompass "millions of documents" and to insist upon "record-by-record pre-production privilege review, on pain of subject matter waiver, would impose upon parties costs of production that bear no proportionality to what is at stake in the litigation").

FED. R. EVID. 502(b) advisory committee's explanatory note (revised 11/28/2007). However, as reflected in this commentary, Rule 502(b) explicitly governs the "inadvertent disclosure" of privileged materials by the holder of the privilege. Again, that is not the situation here.

While the undersigned is aware that this Court has previously granted the Government's motion for protective order under Rule 502(d) under largely analogous circumstances, *see United States v. Harris*, *et al.*, 3:17-CR-103-M, Crim. Doc. 251 (N.D. Tex. August 28, 2017), the undersigned could only conclude that such an order falls outside the bounds of Rule 502(d) and diminishes the importance of the privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 389

(1981) ("[t]he attorney-client privilege is the oldest of the privileges for confidential communication known to the common law … [and] rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out."). It is illogical then that, through no revelation of the privilege holders, purposeful or intentional, their privileged communications can be *legally revealed by another*, and that their only recourse be to attempt to claw them back after the fact. And, again, a plain reading of subsection (d) in the context of Rule 502 in its entirety does not support that conclusion.

For the foregoing reasons, the Court concluded that the Government was not entitled to a Rule 502(d) order permitting it to disclose all information confiscated pursuant to a search warrant over Defendants Hall, Rall, and Schuster's claims of attorney-client privilege and work-product protection.

Nevertheless, it is important to note that the case is now in a different posture than at the time of the two hearings. In its motion for clarification, the Government reports:

> Since the order in September 2019, the filter team has completed its page-by-page privilege review of the search warrant materials. Of the original universe of approximately 245,000 documents identified as Segregated Materials and produced by the filter team to the pharmacy as such, there are approximately 13,000 documents the filter team has marked as "potentially privileged." The remainder of the documents previously identified as Segregated Materials, but subsequently reviewed and released by the filter team to the prosecution team, have been produced in discovery to all defendants. The subset of approximately 13,000 documents that the filter team has marked as potentially privileged (hereinafter referred to as the "Potentially Privileged Materials," or "PPM") was, and continues to be, withheld by the filter team from (a) the prosecution team, (b) the non-pharmacy-owner defendants—including defendants Le, Lock Paret, and Cockerell, and (c) as well as all defendants in the related cases.…

Doc. 253 at 4.

The reasonable assumption of the Court was that after counsel for Xpress Pharmacy (and presumably Defendants Hall, Rall and Schuster) had reviewed the remainder of the Segregated Materials (the "PPM"), any affected Defendant(s) would seek a protective order prohibiting disclosure over those *specific* materials over which they assert attorney-client privilege or work product protection. After all, the Government cannot know for certain which documents are actually privileged or whether any privilege belonging to another would be asserted or waived. Moreover, Defendants Hall, Rall and Schuster presumably had access to conduct their own review of all the same materials as the Government, since the hard drives were only copied and not confiscated by government agents during the execution of the search warrant. However, neither the pharmacy nor any objecting Defendant has sought protection from the Court, and the Government is understandably frustrated (as apparently is Defendant Paret, *see* Doc. 259 at 2) at the delay this has caused in the production of discovery.

However, nothing in the Court's order was intended to relieve any party of the duty of asserting its/his own privilege. *See United States v. El Paso Co*., 682 F.2d 530, 539 (5th Cir. 1982) ("we have made clear that the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents. The privilege must be specifically asserted with respect to particular documents.") (internal citations omitted). *Also cf. Harris*, 3:17-CR-103-M, Crim. Doc. 251 (N.D. Tex. August 28, 2017) (granting the Government's Rule 502(d) motion and permitting disclosure of electronic evidence "including any potentially privileged material" to all defendants, but (1) requiring the affected parties to produce privilege logs and (2) prohibiting use of any materials appearing on said privilege logs until after the Court had ruled on the assertions of privilege) Crim. Doc. 251 at 1-3. Here, the Government has only identified in the PPM what

*might* be subject to attorney-client privilege or work-product protection[5], and the onus remains on the privilege holders to assert the same.

Moreover, the request for review prior to dissemination by Defendants Hall, Rall, and Schuster in their response to the Government's Underlying Motion appeared reasonable:

> Defendants assert that the Segregated Material must be reviewed by counsel for the pharmacies for the privilege of Richard Hall, Scott Schuster, and Dustin Rall prior to the Government's disclosure of any of the Segregated Materials to the other defendants (to whom the privilege does not belong).
>
> Defendants object to the Government's turning over any of Defendants' privileged material to third parties to whom the privilege does not belong. Defendants respectfully request the Court to order that the Government's filter team shall run mutually agreeable search terms to identify privileged documents . . . and send the results of those searches to counsel for the pharmacies for a privilege review.

Doc. 120 at 4. As noted previously, the Government asserts that it has already followed this procedure. Again, however, it is nevertheless the responsibility of the party claiming privilege to actually assert it.

2. *Protective order permitting Rule 16 disclosure of all confiscated evidence*

A search warrant that comports with the guarantees of the Fourth Amendment must explicitly state what can be searched and what items may be seized:

> The fourth amendment proscribes search warrants that permit "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The items to be seized must be described with sufficient particularity such that the executing officer is left with no discretion to decide what may be seized. *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927). However, in circumstances where detailed particularity is impossible "generic language suffices if it particularizes the types of items to be seized." *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir. 1984).

---

[5] The Government is also under no obligation to discern any other privilege that a party might assert. *See* Doc. 120 at 3 (Defendants Hall, Rall and Schuster "object[ing] to the Government's disclosure of any documents which may be protected by the attorney-client privilege, attorney work-product protection, *and/or any other legal privilege*) (emphasis added).

*Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986).  The search warrant at issue here did just that by specifically defining the parameters of the search, to include computer hard drives, and the exact categories of evidence that could be seized.

Here, contrary to the limitations of the search warrant, the Government expressed its intent to disseminate to all Defendants "all seized . . . electronic evidence."  That is, rather than provide only the electronic evidence *authorized for seizure under the search warrant*, the Government intended to disseminate the entire universe of electronically stored information that it was *authorized to confiscate and search for that it was permitted to seize*.  Defendants Hall, Rall, and Schuster rightfully objected.  Moreover, the Government was apparently seeking the Court's sanction of this procedure for the sake of convenience.

The Court concluded, however, that the wholesale production of the documents legally possessed solely for the purpose of searching for evidence subject to seizure therein is neither authorized under the parameters of the search warrant nor the law that governs it.  And it logically follows that if the Government is not authorized to seize it, it certainly has no authority or legal obligation to disseminate it.

At the time application was made for the search warrant at issue in this case, the Government was clearly aware of the enormity of the task of searching the computers for items of evidentiary value within the window provided by the warrant.  Thus, the search warrant application requested, and the Court granted, authorization to "mirror" (make exact copies of) the hard drives in order to search them later and offsite.  Still, at the time of the September 23, 2019 hearing, more than three years had passed since the execution of the search warrant and,

10

apparently, the search of the duplicate hard drives for those items the Government was actually granted permission to seize, had not yet been completed.

Moreover, the search warrant itself made clear that duplicating the hard drives was to permit a more convenient search of them; however, duplicating the hard drives was not the search. Thus, the Government has always had the responsibility to search the contents of the duplicate drives for only that evidence permitted to be seized under the warrant. This is no different that the Government's authority and obligation to search for and seize at the premises of the search other, non-electronic evidence that fell within the parameters of the warrant.

## C. CONCLUSION

To the extent that the Court's order of April 24, 2019, as modified on September 23, 2019, requires clarification, and to provide further guidance necessary to prevent the distortion of the Court's previous rulings on the Government's Underlying Motion, it is ordered as follows:

The Government is **ORDERED** not to make *any* use of, disclose, or disseminate electronic materials confiscated pursuant to the search warrant issued September 8, 2016, that the search warrant does not explicitly authorize be seized as evidence during the examination of the confiscated electronic materials for evidence subject to seizure. This order does not prevent the Government's compliance with its discovery obligations regarding any material it has determined through review constitutes evidence authorized for seizure under the parameters of the search warrant *and* that (1) has not been designated by it as "Potentially Privileged Material" (as identified in its motion for clarification, Doc. 253 at 4), or (2) *is not the specific subject of a motion for protective order, accompanied by a privilege log, filed on or before January 15, 2021*.

The Government is further **ORDERED** not to make any use of, disclose, or disseminate the "Potentially Privileged Material." **However, this prohibition does not apply to any "Potentially Privileged Material" that Xpress Pharmacy counsel and counsel for Defendants Hall, Rall, and Schuster have already been provided for review,** *and which is not the specific subject of a motion for protective order, accompanied by a privilege log, filed on or before January 15, 2021*.

These clarifying orders are in keeping with the spirit and intent of the Court's previous orders and satisfies the concerns of Defendants Hall, Rall, and Schuster regarding dissemination of their privileged materials over their objection and thereby letting the proverbial cat out of the bag, as well as the Government's concern that the burden of asserting another's claims of privilege be unfairly shifted to it, which was never the intention of the Court.

**SO ORDERED** on November 30, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE