# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| RICHARD HALL (01) | § | Case No. 3:18-CR-00623 (S) |
| SCOTT SCHUSTER (02) | § | |
| DUSTIN RALL (03) | § | |
| JOHN LE (04) | § | |
| GEORGE LOCK PARET (05) | § | |
| TURNER LUKE ZEUTZIUS (06) | § | |
| QUINTAN COCKERELL (07) | § | |

## DEFENDANT RICHARD HALL'S MOTION TO SUPPRESS SEIZED EVIDENCE AND THE FRUITS OF THAT EVIDENCE AND MEMORANDUM IN SUPPORT

Defendant Richard Hall, through undersigned counsel, moves the Court for an Order suppressing all evidence seized during the search of 1000 West Weatherford Street in Fort Worth on September 15, 2016 and the fruits of that evidence. First, the search warrant does not describe with particularity the "things to be seized," as the Fourth Amendment expressly requires. Second, the warrant is overbroad, because it vastly exceeds the scope of the probable cause shown in the affidavit of DCIS Special Agent Joseph McCardel. These deficiencies in the warrant are so patent that the good faith exception to the exclusionary rule does not apply.

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................1

    I.     THE WARRANT............................................................................................ 1

    II.    THE McCARDEL AFFIDAVIT ................................................................... 2

          A.    The "Payments to Marketers" Section ....................................... 3

          B.    The "Referrals by Doctors" Section............................................. 5

ARGUMENT .....................................................................................................................5

    I.     HALL HAS STANDING TO CHALLENGE THE SEARCH AND
          SEIZURE ....................................................................................................... 5

    II.    THE WARRANT TO SEARCH 1000 WEST WEATHERFORD STREET
          DOES NOT PARTICULARLY DESCRIBE THE THINGS TO BE
          SEIZED AND AMOUNTS TO A GENERAL WARRANT ................................. 7

          A.    The Requirement of Particularity................................................. 7

          B.    The 1000 West Weatherford Street Warrant Is Not Sufficiently
                Particular and Constitutes a General Warrant........................... 10

          C.    The "Permeated By Fraud" Exception Does Not Apply.......................... 14

    III.   THE SCOPE OF THE WARRANT FAR EXCEEDED THE PROBABLE
          CAUSE SHOWING IN THE McCARDEL AFFIDAVIT ................................. 17

    IV.   THE GOOD FAITH EXCEPTION DOES NOT APPLY ................................... 18

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Bonds v. Cox*,
  20 F.3d 697 (6th Cir. 1994) ................................................................7

*Center Art Galleries-Hawaii, Inc. v. United States*,
  875 F.2d 747 (9th Cir. 1989) ............................................................18

*DePugh v. Penning*,
  888 F. Supp. 959 (D. Iowa 1995)........................................................7

*Freeman v. City of Dallas*,
  242 F.3d 642 (5th Cir. 2001) (en banc) ............................................7

*Grand Jury Subpoena v. Kitzhaber*,
  828 F.3d 1083 (9th Cir. 2016) ..........................................................10

*Groh v. Ramirez*,
  540 U.S. 551 (2004)........................................................................7, 8

*Henzel v. United States*,
  296 F.2d 650 (5th Cir. 1961) ..............................................................5

*Lenz v. Winburn*,
  51 F.3d 1540 (11th Cir. 1995) (en banc) ...........................................7

*Leventhal v. Knapek*,
  266 F.3d 64 (2d Cir. 2001)..................................................................6

*Mancusi v. DeForte*,
  392 U.S. 364 (1968).............................................................................6

*Maryland v. Garrison*,
  480 U.S. 79 (1987)...............................................................................8

*Rickert v. Sweeney*,
  813 F.2d 907 (8th Cir. 1987) ............................................................11

*Riley v. California*,
  573 U.S. 373 (2014)..............................................................................9

*Severance v. Patterson*,
  566 F.3d 490 (5th Cir. 2009) ..............................................................7

*Soldal v. Cook County*,
  506 U.S. 56 (1992)................................................................................7

*United States v. Abboud,*
   438 F.3d 554 (6th Cir. 2006) ...................................................11

*United States v. Abrams,*
   615 F.2d 541 (1st Cir. 1980)...............................................11, 12

*United States v. Allen,*
   625 F.3d 830 (5th Cir. 2010) ..........................................7, 8, 18

*United States v. Beaumont,*
   972 F.2d 553 (5th Cir. 1992) ...................................................19

*United States v. Bridges,*
   344 F.3d 1010 (9th Cir. 2003) .................................................12

*United States v. Cardoza-Hinojosa,*
   140 F.3d 610 (5th Cir. 1998) .....................................................6

*United States v. Cioffi,*
   668 F. Supp. 2d 385 (E.D.N.Y. 2009) .......................................8

*United States v. Comprehensive Drug Testing, Inc.,*
   621 F.3d 1162 (9th Cir. 2010) (en banc) ................................10

*United States v. Cook,*
   657 F.2d 730 (5th Cir. 1981) ...................................................13

*United States v. Cotterman,*
   709 F.3d 952 (9th Cir. 2013) ...............................................9, 10

*United States v. Ferguson,*
   2012 U.S. Dist. LEXIS 24929 (E.D. Mich. Feb. 27, 2012) ........6

*United States v. Fleet Management Ltd.,*
   521 F. Supp. 2d 436 (E.D. Pa. 2007) ......................................12

*United States v. Ford,*
   184 F.3d 566 (6th Cir. 1999) .............................................14, 18

*United States v. Galpin,*
   720 F.3d 436 (2d Cir. 2013)...............................................8, 10

*United States v. Gonzalez, Inc.,*
   412 F.3d 1102 (9th Cir. 2005). ..................................................6

*United States v. Humphrey,*
   104 F.3d 65 (5th Cir. 1991) ................................................14, 16

*United States v. Kow*,
    58 F.3d 423 (9th Cir. 1995) ........................................................................12, 14, 15, 19

*United States v. Leary*,
    846 F.2d 592 (10th Cir. 1988) .............................................8, 10, 12, 13, 14, 18, 19

*United States v. Leon*,
    468 U.S. 897 (1984)..............................................................................................18

*United States v. Maxwell*,
    920 F.2d 1028 (D.C. Cir. 1990).............................................................................10

*United States v. Morton*,
    984 F.3d 421 (5th Cir. 2021) .......................................................................7, 8, 18

*United States v. Offices Known as 50 State Distributing Co.*,
    708 F.2d 1371 (9th Cir. 1983) .............................................................................17

*United States v. Oloyede*,
    982 F.2d 133 (4th Cir. 1992) (per curiam)......................................................14, 17

*United States v. Reeves*,
    2012 U.S. Dist. LEXIS 68962 (D.N.J. May 17, 2012) ........................................6, 7

*United States v. Roche*,
    614 F.2d 6 (1st Cir. 1980)...............................................................................11, 12

*United States v. Sanjar*,
    876 F.3d 725 (5th Cir. 2017) ..........................................................................17, 18

*United States v. Shugart*,
    117 F.3d 838 (5th Cir. 1997) ...........................................................................8, 19

*United States v. Sims*,
    553 F.3d 580 (7th Cir. 2009) ...............................................................................10

*United States v. Slanina*,
    283 F.3d 670 (5th Cir.), *vacated*, 537 U.S. 802 (2002), *reaffirmed in part*, 359 F.3d
    356 (5th Cir. 2004)................................................................................................6

*United States v. Smith*,
    424 F.3d 992 (9th Cir. 2005) ...............................................................................17

*United States v. Spilotro*,
    800 F.2d 959 (9th Cir. 1986) ......................................................................14, 18, 19

*United States v. Stubbs*,
    873 F.2d 210 (9th Cir. 1989) ......................................................14, 15, 16, 18, 19

*United States v. Triplett*,
    684 F.3d 500 (5th Cir. 2012) ..................................................................8

*United States v. Wey*,
    256 F. Supp. 3d 355 (S.D.N.Y. 2017) ...............................................8, 10, 13

*United States v. White*,
    541 F. Supp. 1181 (N.D. Ill. 1982) .......................................................11

*United States v. Winn*,
    79 F. Supp. 3d 904 (S.D. Ill. 2015) ..........................................11, 12, 18, 19

*United States v. Zemlyansky*,
    945 F. Supp. 2d 438 (S.D.N.Y. 2013) .........................................5, 12, 16, 18, 19

*Voss v. Bergsgaard*,
    774 F.2d 402 (10th Cir. 1985) ........................................................11, 16

*West v. Gibson*,
    527 U.S. 212 (1999) ......................................................................12

*Williams v. Kunze*,
    806 F.2d 594 (5th Cir. 1986) ............................................................14

## CONSTITUTION, STATUTES, AND RULES

U.S. Const. Amend. IV .................................................................... passim

18 U.S.C. § 287 ...............................................................................1

18 U.S.C. § 1035 ..............................................................................1

18 U.S.C. § 1343 ..............................................................................1

26 U.S.C. 3121 ................................................................................4

42 U.S.C. § 1320a-7b .......................................................................1, 4

42 C.F.R. § 1001.952 ..........................................................................4

## MEMORANDUM IN SUPPORT

## BACKGROUND

On September 15, 2016, federal agents executed a search at 1000 West Weatherford Street in Fort Worth, the offices of Rxpress Pharmacy, Xpress Compounding, and other entities.  The search was conducted under the authority of a warrant issued by this Court.  Exhibit A.  The warrant rested on the affidavit of Agent McCardel.  Exhibit B.  In the course of the search, federal agents seized about 150 boxes of documents and other items and thirteen electronic devices.  In addition, agents imaged portions of servers containing vast quantities of data.  Exhibit C.  We discuss the warrant and the McCardel affidavit in turn.

## I.      THE WARRANT.

The warrant authorized agents to search for and seize "[a]ll records, data and information constituting intrumentalities, evidence, or fruits of violations of" five federal criminal statutes--18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1347 (health care fraud), 18 U.S.C. § 287 (false claims against the government), 18 U.S.C. § 1035 (false statements related to health care matters), and 42 U.S.C. § 1320a-7b (describing several offenses relating to federal health care programs, including false statements and giving or receiving kickbacks)--"including but not limited to" three categories of documents, each with subcategories, and "all computer equipment and the items listed above that are contained in any computer equipment as follows, and pertains to the above listed persons, businesses, or entities."  Exhibit A, Attachment B, at 2.

The three categories of documents included virtually every record housed at 1000 West Weatherford Street.   The first category consisted of "[b]usiness records, documents, or communications of Rxpress Pharmacy, Xpress Compounding, or Tactical Health Partners including" 14 broad subcategories.  Exhibit A, Attachment B, at 2-3.

The second category of documents consisted of "[m]edical records, documents, or communications relating to shipping, billing, or interaction with patients, to include, but not limited to, payment of commissions, payment of remuneration to any beneficiary, or issuance of any compounded medication, including pain creams, scar creams, or multivitamins." Exhibit A, Attachment B, at 3-4.

The third category of documents consisted of "[a]ll communications, to include text messages, emails, instant messages, facsimiles, [and] Apple iMessages, between" nine named persons (including the defendants in this case), "doctors, and any other associate of Rxpress Pharmacy, Tactical Health Care Partners, Tiger Racing Team, or Zorin Holdings." The warrant then listed two broad subcategories, but did not limit the third category to communications falling within those subcategories. Exhibit A, Attachment B, at 4.

Finally, the warrant permitted the search and seizure of "all computer equipment and the items listed above that are contained in any computer equipment as follows, and pertains to the above listed persons, businesses, or entities." The subcategories that followed included all computer hardware and software and electronic storage media. Exhibit A, Attachment B, at 4-6. The warrant authorized the agents to make mirror images of the computers and storage media "off-site for the purposes of searching." The warrant did not prescribe any protocol for the agents' off-site searches of the computer and storage media. Exhibit A, Attachment B, at 7.

## II.     THE McCARDEL AFFIDAVIT.

Paragraphs 1 through 11 of the McCardel affidavit (Exhibit B) recite Agent McCardel's training and described the place to be searched. Paragraph 12 states Agent McCardel's belief that the owners and employees of Rxpress Pharmacy, Tactical Health Care Partners ("THCP"), Xpress Compounding, and Tiger Racing Team ("TRT") were engaged in violations of the same criminal

statutes listed in the warrant.  Paragraph 13 asserts that there was probable cause to believe that "documents and items that are evidence of a crime, fruits of a crime, or other items illegally possessed or property designed for use, intended for use or used in a crime in violation of" the listed statutes would be found at 1000 West Weatherford Street.  Paragraphs 15 through 23 provide background on compound drugs and federal health care programs, including TRICARE.

The probable cause portion of the affidavit begins at paragraph 24.  That portion of the affidavit consists of two sections, captioned "Payments to Marketers for Compound Prescriptions" (Exhibit B at 7) and "Referrals by Doctors to Rxpress Pharmacy for Compound Prescriptions (Exhibit B at 10).

### A.    The "Payments to Marketers" Section.

The "Payments to Marketers" portion of the affidavit (paragraphs 24-33) focuses on six individuals--Britt Hawrylak, Matt Hawrylak, Jerry Hawrylak, Lock Paret, Eric Twigg, and Dr. Brian Carpenter--and three entities--THCP, TRT, and Rxpress Pharmacy.  Only two paragraphs allege violations of the anti-kickback statute, 42 U.S.C. § 1320a-7b(b).  Paragraph 25 alleges that Twigg was paid $1000 to $2000 for each TRICARE beneficiary, of which he gave about $500 to the beneficiary.  Paragraph 32 alleges that Britt Hawrylak gave Jerry Hawrylak $10,000 that was to be given to Dr. Carpenter for signing TRICARE prescriptions.

The remaining paragraphs of the "Payments to Marketers" section make no showing that the conduct alleged violated the anti-kickback statute.  For example, paragraph 26 alleges that TRT "has paid approximately 34 individuals and entities through its Liberty Bank account using the annotation '1099 RX' on the memo line."  But there is no showing that these payments were bribes or kickbacks for referrals, and--most important--there is no showing that the prescriptions involved federal health care programs.  The anti-kickback statute applies only to federal health care

3

programs; it has no bearing on private insurance payments or out-of-pocket payments by patients. 42 U.S.C. § 1320a-7b(b), (f).  Similarly, paragraph 28 alleges an agreement between THCP and TRT under which TRT "would be paid 40% of 'Net Commissionable Revenue' for completed sales sent through Xpress Compounding and Rxpress."  But the affidavit makes no showing that the agreement contemplated bribes or kickbacks for referrals, and it does not connect the "Net Commissionable Revenue" to any federal health care program.

Paragraphs 30 and 31 allege payments to Britt Hawrylak for referrals to Rxpress.  But those paragraphs do not distinguish between referrals of persons with private health insurance and referrals of persons participating in federal health care programs.  Moreover, the affidavit omits that the anti-kickback statute excludes from its prohibition "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services."  42 U.S.C. § 1320a-7b(b)(3)(B).  Although, according to the McCardel affidavit, Hawrylak denied being an employee of Rxpress, he admitted that he was "required to be paid as a W2 employee."  Apart from Hawrylak's alleged assertion, the affidavit does not attempt to show that Hawrylak was not an employee and thus was not within the statutory "safe harbor" for payments to employees.[1]

---

[1] Whether a person is an employee for purposes of 42 U.S.C. § 1320a-7b(b)(3)(B) is a complex question.  By regulation, HHS ties the definition of "employee" under § 1320a-7b(b)(3)(B) to the meaning the term is given under 26 U.S.C. § 3121(d)(2), a provision of the Internal Revenue Code. 42 C.F.R. § 1001.952(i).  Section 3121(d)(2), in turn, defines "employee" (as relevant here) as "an individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."  26 U.S.C. § 3121(d)(2).  The McCardel affidavit does not discuss whether Hawrylak was an employee "under the usual common law rules for determining the employer-employee relationship."

In short:   the "Payments to Marketers" portion of the McCardel affidavit establishes probable cause for a narrow range of activity:   the Twigg payments to TRICARE beneficiaries alleged in paragraph 25 and the $10,000 payment to Dr. Carpenter alleged in paragraph 32.

**B.      The "Referrals by Doctors" Section.**

The "Referrals by Doctors" section of the McCardel affidavit (paragraphs 34-57) alleges that certain doctors wrote prescriptions filled at Xpress Compounding without having the type of patient consultation that (according to paragraph 21 of the affidavit) the TRICARE Policy Manual requires.   It is far from clear that violation of the Policy Manual's "telemedicine" standards constitutes a crime.   To the extent it does, however, the affidavit ascribes that conduct only to four doctors (including Dr. Carpenter) and ten patients.

**ARGUMENT**

**I.      HALL HAS STANDING TO CHALLENGE THE SEARCH AND SEIZURE.**

Hall has standing to challenge the search of 1000 West Weatherford Street and the seizure of items found there.

First, at the time of the search Hall was part-owner (through entities in which he had an ownership interest) of the property that was searched (1000 West Weatherford Street) and two of the companies whose offices were housed there (Rxpress and Xpress).   Declaration of Richard Hall ["Hall Dec."] ¶¶ 2, 3 (attached as Exhibit D).   As part-owner of both the property and the companies searched, Hall has standing to challenge the search.   *See, e.g., Henzel v. United States*, 296 F.2d 650, 652-53 (5th Cir. 1961) (sole stockholder and president of corporation, who prepared much of the material seized and spent the greater part of the average working day there, had standing to challenge search of corporate office); *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 452 (S.D.N.Y. 2013) (owner and two defendants who participated in managing and running the operations of the company had standing to challenge search of company offices); *United States*

5

*v. Reeves*, 2012 U.S. Dist. LEXIS 68962, at *21-*24 (D.N.J. May 17, 2012) (owner of business and employee under his supervision had standing to challenge search of employee's workspace and computer); *United States v. Ferguson*, 2012 U.S. Dist. LEXIS 24929, at *15-*18 (E.D. Mich. Feb. 27, 2012) (co-owners and officers of business, who were involved in preparing at least some business records, had standing to challenge search of business premises); *see also United States v. Cardoza-Hinojosa*, 140 F.3d 610, 613 (5th Cir. 1998) ("It is settled law that the Fourth Amendment's protections against arbitrary searches and seizures are presumptively applicable not only in an individual's home, but also in any commercial premises he may own or use."); *cf. United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1116-17 (9th Cir. 2005) (owners of small business have standing to challenge wiretaps made on the business premises of conversations to which they were not a party).

Second, as the McCardel affidavit indicates (at paragraph 63), Hall maintained an office at 1000 West Weatherford Street.  Hall Dec. ¶ 4.  The Supreme Court has recognized that corporate officers and employees have standing to raise Fourth Amendment challenges to searches of their personal workspace and the immediately surrounding area, even if those spaces are shared with other employees.  *See, e.g., Mancusi v. DeForte*, 392 U.S. 364, 369 (1968) ("It has long been settled that one has standing to object to a search of his office, as well as of his home."); *United States v. Slanina*, 283 F.3d 670, 677 (5th Cir.) (same), *vacated on other grounds*, 537 U.S. 802 (2002), *reaffirmed in relevant part*, 359 F.3d 356, 358 (5th Cir. 2004).

Third, Hall had a reasonable expectation of privacy in the computers used at Rxpress and Xpress and thus has standing to challenge the search of those computers.  *See, e.g., Slanina*, 283 F.3d at 677; *Leventhal v. Knapek*, 266 F.3d 64, 73-74 (2d Cir. 2001) (public employee); Hall Dec. ¶ 5.  Similarly, as part-owner of Rxpress and Xpress and part of the management team, Hall has

standing to challenge the search of the company computers.  *See, e.g., Reeves*, 2012 U.S. Dist. LEXIS 68962, at \*21-\*24.  In addition, the government seized and imaged a personal, password-protected laptop belonging to Hall, in which he had a reasonable expectation of privacy.  Hall Dec. ¶ 6.

Fourth, the Fourth Amendment "protects property as well as privacy," and thus prohibits unreasonable seizures of property even in the absence of a search.  *Soldal v. Cook County*, 506 U.S. 56, 62 (1992).  A "seizure" occurs "when there is some meaningful interference with an individual's possessory interest in that property."  *Id*. at 61 (quotation omitted); *see, e.g., Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009); *Freeman v. City of Dallas*, 242 F.3d 642, 647 n.5 (5th Cir. 2001) (en banc).  As part-owner at the time of the search of the 1000 West Weatherford Street property and of Rxpress and Xpress, Hall has standing to challenge the government's interference with his "possessory interest" in the documents, computers, and other property located there.  *See, e.g., Lenz v. Winburn*, 51 F.3d 1540, 1550 n.10 (11th Cir. 1995) (en banc) (possessory interest creates standing to challenge seizure, even in absence of expeactation of privacy); *Bonds v. Cox*, 20 F.3d 697, 701-02 (6th Cir. 1994) (same); *DePugh v. Penning*, 888 F. Supp. 959, 975-77 (D. Iowa 1995) (same).  And he has standing to challenge the seizure of his personal laptop.

## II.     THE WARRANT TO SEARCH 1000 WEST WEATHERFORD STREET DOES NOT PARTICULARLY DESCRIBE THE THINGS TO BE SEIZED AND AMOUNTS TO A GENERAL WARRANT.

### A.     The Requirement of Particularity.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the . . . things to be seized."  U.S. Const. Amend. IV; *see Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *United States v. Morton*, 984 F.3d 421, 426 (5th Cir. 2021); *United States v. Allen*, 625 F.3d 830, 834-35 (5th Cir. 2010).  "To avoid fatal generality, the place and items to be seized must be described with sufficient

7

particularity so as to leave nothing to the discretion of the officer executing the warrant." *United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012) (quotation omitted).

The particularity requirement serves several purposes. It "prevent[s] general searches" and thus "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *see, e.g., Allen*, 625 F.3d at 835 ("A general order to explore and rummage through a person's belongings is not permitted." (quotation omitted)). It also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh*, 540 U.S. at 561 (quotation omitted); *see, e.g., United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988). A warrant's compliance with the particularity requirement must be determined from the face of the warrant itself, including any attachments. *See Groh*, 540 U.S. at 557-58.[2]

As the Fifth Circuit recently observed, the particularity requirement "is especially important in the context of searches of digitial devices that contain so much content." *Morton*, 984 F.3d at 426 n.5; *see, e.g., United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (particularity "assumes even greater importance" when the search involves computers, cell phones, and other electronic storage devices); *United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017) (same). Federal courts have made clear that computers enjoy heightened protection under

---

[2] The particularity of the warrant may be supplemented by the application and affidavit, but only "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Groh*, 540 U.S. at 557-58; *see, e.g., United States v. Cioffi*, 668 F. Supp. 2d 385, 393-96 (E.D.N.Y. 2009) (applying *Groh* incorporation standard). Here, the warrant expressly incorporates Attachments A and B, which describe the location to be searched and the items to be searched for and seized, but does not expressly incorporate any other portion of the application or affidavit. Nor, as far as we know, were other portions of the application or affidavit attached to the warrant. Thus, particularity must be determined from the warrant, including Attachments A and B. *See, e.g., United States v. Shugart*, 117 F.3d 838, 845 (5th Cir. 1997).

the Fourth Amendment, because of the extraordinary volume of intensely personal information they may contain.  The Supreme Court's unanimous opinion in *Riley v. California*, 573 U.S. 373 (2014), summarized the profound privacy concerns of a cell phone (and, by the same logic, other modern computers):

> The storage capacity of cell phones has several interrelated consequences for privacy.  First, a cell phone collects in one place many distinct types of information--an address, a note, a prescription, a bank statement, a video--that reveal much more in combination than any isolated record.  Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible.  The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet.  Third, the data on a phone can date back to the purchase of the phone, or even earlier.  A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone.

*Id*. at 394-95.  The Court observed that the data on a cell phone (or any other computer) differs from physical records qualitatively as well as by quantity.  As the Court found, "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form--unless the phone is."  *Id*. at 396-97 (emphasis in original).

Other courts as well have emphasized the privacy concerns that computer searches implicate.  In *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (en banc), for example, the court observed:

> Laptop computers, iPads and the like are simultaneously offices and personal diaries. They contain the most intimate details of our lives: financial records, confidential business documents, medical records and private emails. This type of material implicates the Fourth Amendment's specific guarantee of the people's right to be secure in their "papers." U.S. Const. amend. IV.  The express listing of papers reflects the Founders' deep concern with safeguarding the privacy of thoughts and ideas--what we might call freedom of conscience--from invasion by the government.

*Id.* at 964; *see Grand Jury Subpoena v. Kitzhaber*, 828 F.3d 1083, 1090 (9th Cir. 2016) (same); *Galpin*, 720 F.3d at 446-47 (same); *Wey*, 256 F. Supp. 3d at 383 (same). The Ninth Circuit added that "[e]lectronic devices often retain sensitive and confidential information far beyond the perceived point of erasure, notably in the form of browsing histories and records of deleted files." *Cotterman*, 709 F.3d at 965; *see United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010) (en banc) (noting the "serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant").

### B.     The 1000 West Weatherford Street Warrant Is Not Sufficiently Particular and Constitutes a General Warrant.

Under these standards, the warrant to search 1000 West Weatherford Street--including the electronic devices found there--fails adequately to particularize the "things to be seized."

To begin, the warrant authorizes the search for and seizure of "[a]ll records, data and information constituting instrumentalities, evidence, or fruits of violations of" five federal criminal statutes, including wire fraud and health care fraud. Exhibit A, Attachment B, at 1. Courts have repeatedly held that warrants authorizing seizure of evidence of violations of broad federal criminal statutes may amount to general warrants. *See, e.g., United States v. Sims*, 553 F.3d 580, 581-82 (7th Cir. 2009) (warrant impermissibly general where it authorized seizure of "any other evidence indicative of a criminal offense of Burglary, Theft or Possession of Stolen Property"); *United States v. Maxwell,* 920 F.2d 1028, 1033 (D.C. Cir. 1990) ("References to broad statutes realistically constitute no limitation at all on the scope of an otherwise overbroad warrant and therefore cannot save it."); *Leary*, 846 F.2d at 594, 601-02 (warrant invalid that authorized seizure of several categories of records "relating to the purchase, sale and illegal exportation of materials in violation of the Arms Export Control Act, 22 U.S.C. 2778, and the Export Administration Act

of 1979, 50 U.S.C. App. 2410"); *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987) (warrant invalid that "authorize[d] a general search limited only by references to the general conspiracy statute, 18 U.S.C. § 371, and general tax evasion statutes, 26 U.S.C. §§ 7201 and 7206(2)"); *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985) (warrant invalid where it said that eleven listed categories of documents "are evidence of violations of Title 18, United States Code, Section 371"); *United States v. Abrams*, 615 F.2d 541, 546-47 (1st Cir. 1980) (warrant invalid that authorized seizure of records evidencing "actual medical services performed and fraudulent services claimed to have been performed in a scheme to defraud the United States and to submit false medicare and medicaid claims for payments to the United States or its agents; in violation of Title 18, United States Code, Section 1001"); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980) ("[S]ection 1341 makes illegal all frauds that utilize the mails; limitation by so broad a statute is no limitation at all." (footnote omitted)); *United States v. Winn*, 79 F. Supp. 3d 904, 921 (S.D. Ill. 2015) ("An unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant.") (quotation omitted); *United States v. White*, 541 F. Supp. 1181, 1185-86 (N.D. Ill. 1982) (warrant invalid that authorized seizure of "all books, records and merchandise which are fruits, instrumentalities and evidence" of violation of the mail fraud statute; court notes that mail fraud statute "embraces an enormous range of criminal activity").  Just as the limitation to evidence of mail fraud in *Roche* was "no limitation at all," 614 F.2d at 8, the purported limitation in the warrant at issue here to "instrumentalities, evidence, or fruits of violations of " the wire fraud statute and four other broad federal statutes is entirely ephemeral.

The warrant has a second fatal flaw:  it imposes no date restriction on the items to be searched for and seized.  Courts give substantial weight to the absence of dates in determining the particularity of a warrant.  *See, e.g., United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006)

("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.") (quotation omitted); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) ("The government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place, even though Gordon's affidavit indicates that the alleged criminal activity began relatively late in HK Video's existence."); *Leary*, 846 F.2d at 604 ("The warrant could have been limited to . . . a specific period of time coincident to the suspect transaction."); *Abrams*, 615 F.2d at 543 (among other warrant deficiencies, "there is no limitation as to time"); *Roche*, 614 F.2d at 7 n.1 ("[W]e are concerned because the warrants were not limited to records generated in a stated period of time."); *Winn*, 79 F.3d at 921 (failure to limit scope of warrant by relevant dates, when dates are available, renders it overbroad); *Zemlyansky*, 945 F. Supp. 2d at 459-60 (absence of a temporal limitation "reinforces the Court's conclusion that the Tri-State warrant functioned as a general warrant").

The three categories of documents listed in the warrant do not provide the particularity that the Fourth Amendment requires. The warrant introduces those categories with the phrase "including but not limited to." Exhibit A, Attachment B, at 1. The word "including" standing alone means that the category described is "not limited to the examples that follow that word." *West v. Gibson*, 527 U.S. 212, 218 (1999). The addition of the phrase "but not limited to" underscores that meaning. As one court explained, "the warrant's 'including but not limited to' clause does not add particularity to the otherwise general warrant as it, by its own terms, imposes no limitation on the data to be seized." *United States v. Fleet Management Ltd.*, 521 F. Supp. 2d 436, 444 (E.D. Pa. 2007); *see, e.g., United States v. Bridges*, 344 F.3d 1010, 1018 (9th Cir. 2003) ("If . . . the scope of the warrant is 'not limited to' the specific records listed on the warrant, it is

12

unclear what is its precise scope or what exactly it is that the agents are expected to be looking for during the search.").

Even if the warrant had not expressly stated that its scope was "not limited to" the three categories, they would impose no meaningful restriction on the scope of the search and seizure. The first category, with its fourteen subcategories, effectively encompasses every business record found at 1000 West Weatherford Street.  Exhibit A, Attachment B, at 2-3.  The second category captures every medical record on the premises.  Exhibit A, Attachment B, at 3-4.  The third category authorizes search for and seizure of virtually every communication between or among anyone associated with Rxpress, Xpress, THCP, TRT, or Zorin Holdings.  Exhibit A, Attachment B, at 4.  As the Tenth Circuit put it when confronted with a similar list of records, "The warrant encompassed virtually every document that one might expect to find in a modern export company's office. . . .  [T]he fourth amendment requires more."  *Leary*, 846 F.2d at 602 (citing cases); *see, e.g., Wey*, 256 F. Supp. 3d at 385-86 (expansive categories of generic documents do not provide necessary particularity; citing cases).  The three broad categories of documents in the 1000 West Weatherford Street warrant "encompassed virtually every document that one might expect to find" at a pharmacy.  Such a broad and generic list does not satisfy the Fourth Amendment particularity requirement.

In assessing the particularity of warrants, courts consider whether information was available to limit the scope of the warrant.  *See, e.g., Leary*, 846 F.2d at 604-05.  As the Fifth Circuit has put it, "Failure to employ the specificity available will invalidate a general description in a warrant."  *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981).  Here, such "specificity" was readily available.  First, the warrant could have been limited by time.  The McCardel affidavit describes a series of prescriptions and transactions involving specific people.  It would have been

a simple matter to include date restrictions in the warrant based on when those prescriptions and transactions occurred.   "Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad."   *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999).

Second, the warrant could have eliminated the "including but not limited to" introduction to the three categories of documents, so that the categories served as an actual limit on the scope of the warrant.   Third, instead of generically describing virtually every record that would be found at the search site, the three categories could have been tied expressly to the specific bribes and kickbacks alleged in the McCardel affidavit.   Finally, the warrant could have been limited to prescriptions and transactions involving the persons and entities specified in the affidavit.

Because the warrant does not include any of these readily available limitations, and because it lacks any other meaningful limit on the discretion of the agents conducting the search and seizure, it violates the Fourth Amendment particularity requirement.   *See, e.g., Kow*, 58 F.3d at 428-30; *United States v. Stubbs*, 873 F.2d 210, 212-13 (9th Cir. 1989); *Leary*, 846 F.2d at 605-10; *United States v. Spilotro*, 800 F.2d 959, 967-68 (9th Cir. 1986).

### C.      The "Permeated By Fraud" Exception Does Not Apply.

The "permeated by fraud" exception to the Fourth Amendment particularity requirement permits seizure of all records of a business when the affidavit supporting the search warrant provides "'probable cause . . . to believe that an entire business was merely a scheme to defraud, or that all the records of a business are likely to constitute evidence.'"   *United States v. Humphrey*, 104 F.3d 65, 69 (5th Cir. 1997) (quoting *Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986)); *see, e.g., Kow*, 58 F.3d at 428; *United States v. Oloyede*, 982 F.2d 133, 140 (4th Cir. 1992) (per curiam).

14

The McCardel affidavit contains none of the allegations necessary to invoke the "permeated by fraud" exception. The affidavit does not allege or otherwise show that the "entire business [of Rxpress and Xpress] was merely a scheme to defraud." Nor does the affidavit show that "all the records of [the pharmacies] are likely to constitute evidence." McCardel's affidavit establishes at most probable cause to believe that a handful of transactions involving a limited number of people may have violated the law. Those transactions do not come close to showing that all of the pharmacies' records are likely to constitute evidence of a crime.

A review of the cases confirms that the "permeated by fraud" theory has no bearing here. In *Kow*, for example, the search warrant affidavit alleged that the target business--HK Video--"maintained multiple sets of accounting records, paid falsified invoices submitted by phony corporations, and paid employees under the table, all for the purpose of defrauding the Internal Revenue Service and HK T.V., sending the skimmed profits to fictitious companies in Hong Kong." 58 F.3d at 425. The affidavit also alleged that "when HK Video learned that its license with HK T.V. was in jeopardy and might be awarded instead to H.K. Video's competitor, Shaw Home Entertainment . . . Shaw's employees became the targets of threatened and actual violence until Shaw notified HK T.V. that it was no longer interested in the license." *Id*. The court of appeals held that these allegations--far more extensive than the allegations of purported criminal conduct in the McCardel affidavit--did not establish the "permeated by fraud" exception. *See id*. at 427-28.

In *United States v. Stubbs*, 873 F.2d 210 (9th Cir. 1989), the search warrant affidavit "detail[ed] certain aspects of the [target] operation which were used to evade taxes," but "did not provide probable cause for a reasonable belief that tax evasion permeated Stubbs's entire real estate

business." *Id*. at 211.  The court accordingly rejected the "permeated by fraud" exception, found

the warrant non-particular, and suppressed the resulting evidence.  *See id*. at 211-13.

> In *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir. 1985), the search warrant affidavit
>
> detailed an investigation of the National Commodities and Barter Association (NCBA) and its National Commodities Exchange (NCE).  It described meetings between IRS undercover agents and NCBA officials in which those officials allegedly described how their organization was designed to conduct financial transactions on behalf of its clients in a manner designed to avoid detection by the IRS.  The techniques allegedly employed included the conversion of negotiable instruments into cash and precious metals, to be redeemed by clients through the use of warehouse receipts; the use of private account numbers instead of clients' names; the use of fictitious names; the encoding of information prior to storage in computers; the destruction of business records and computer software; and the refusal to surrender client information to the IRS.  The affidavit further described the use of an NCBA account by an IRS agent to convert into cash sums of money payable to assumed names.

*Id*. at 403.  Despite these allegations, the court of appeals rejected application of the "permeated

by fraud" exception.  It observed that "while the government's affidavit pointed to evidence in

support of a substantial tax fraud scheme, it did not even purport to support the proposition that

fraud pervaded every aspect of the NCBA."  *Id*. at 406; *see, e.g., Zemlyansky*, 945 F. Supp. 2d at

461 ("In cases where the all records exception has been applied, the affidavit submitted in support

of the warrant contained detailed information that would provide reason to believe that all or nearly

all of the business under investigation was illegal.").  The McCardel affidavit does not allege the

breadth of criminal activity found inadequate in *Voss*, and it even more clearly fails to "support

the proposition that fraud pervaded every aspect of" the pharmacies' business.

These cases demonstrate that the McCardel affidavit falls far short of establishing probable

cause to believe that Rxpress and Xpress were permeated by fraud.  Cases that find the exception

established are readily distinguishable.  In *Humphrey*, for example, the search warrant affidavit

"support[ed] the conclusion that the entire business operated by the Humphreys was merely a

scheme to defraud."  104 F.3d at 69; *see id*. at 67 (defendants "operated a loan brokerage service

16

that was essentially a scam").  In *United States v. Smith*, 424 F.3d 992 (9th Cir. 2005), the search warrant affidavit detailed the defendants' tax fraud scheme and "concluded that 'the entirety of the businesses operated by Bates, Smith and their associates are criminal in nature.'"  *Id*. at 1006 (quoting affidavit).  In *Oloyede*, the targets of the search ran a fraudulent immigration assistance scheme.  The search warrant affidavit showed that the "entire practice was permeated with fraud. Documentation in over 50 cases alerted INS to the problem, two confidential informants outlined in great detail the procedures associated with appellants' operation, and a review of 26 files disclosed that each file contained fraudulent documents."  982 F.2d at 140.  In *United States v. Offices Known as 50 State Distributing Co.*, 708 F.2d 1371 (9th Cir. 1983), the target business was a boiler room operation.  The search warrant affidavit described the uniformly deceptive sales practices of the telemarketers working for the company and concluded that it was "executing a scheme and artifice to defraud and to obtain money and property from businesses and various other organizations by means of false and fraudulent pretenses."  *Id*. at 1372-73.  The court of appeals had little difficulty finding that "there was probable cause to believe that fraud permeated the entire business operation of 50 State."  *Id*. at 1374.

In contrast to these cases, the McCardel affidavit alleges a handful of specific prescriptions and transactions involving a limited group of doctors, patients, and marketers.  That does not approach the probable cause showing in cases that have applied the "permeated by fraud" exception to the particularity requirement.

## III.    THE SCOPE OF THE WARRANT FAR EXCEEDED THE PROBABLE CAUSE SHOWING IN THE MCCARDEL AFFIDAVIT.

The Fourth Amendment requires that "(1) a warrant provide sufficient notice of what the agents may seize and (2) probable cause exist to justify listing those items as potential evidence subject to seizure."  *United States v. Sanjar*, 876 F.3d 725, 735-36 (5th Cir. 2017).  As shown in

17

Part II, the warrant does not satisfy the first requirement. Nor does it satisfy the second. At most, the McCardel affidavit establishes probable cause to search for and seize a narrow swathe of records dealing with specific persons, prescriptions, and transactions over a limited period of time. Nothing in the affidavit establishes probable cause to search for and seize virtually every business, medical, communications, and electronic record found at 1000 West Weatherford Street, as the warrant purported to authorize. *See id.* at 736 ("If the evidence presented to the magistrate provided probable cause of fraud limited to a particular patient or group of patients, the resulting warrant authorizing seizure of all of Spectrum's patient files would be problematic."). All evidence that falls outside the narrow probable cause showing in the McCardel affidavit must be suppressed. *See, e.g., Ford*, 184 F.3d at 576-78 (suppressing documents outside time period for which affidavit established probable cause).

## IV.     THE GOOD FAITH EXCEPTION DOES NOT APPLY.

The good faith exception to the exclusionary rule, recognized in *United States v. Leon*, 468 U.S. 897 (1984), does not apply here. "Because the warrant in this case was facially invalid, no reasonable agent could have relied on it absent some exceptional circumstance." *Kow*, 58 F.3d at 428-29) (quotation omitted); *see, e.g., Morton*, 984 F.3d at 430 (good faith exception does not apply where no reasonably well-trained officer would believe that probable cause existed to search photographs on cell phone); *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 752-54 (9th Cir. 1989) (good faith exception does not apply to facially invalid warrant); *Leary*, 846 F.2d at 609-10 (same); *Stubbs*, 873 F.2d at 212 (same); *Spilotro*, 800 F.2d at 968; *Winn*, 79 F. Supp. 3d at 924 (same); *Zemlyansky*, 945 F. Supp. 2d at 465-76 (same); *cf. Allen*, 625 F.3d at 839-40 (good faith exception applies to non-particular warrant where affidavit was detailed and agents took extensive measures to ensure search was conducted within constitutional limits); *Shugart*,

117 F.3d at 845-46 (same); *United States v. Beaumont*, 972 F.2d 553, 562 (5th Cir. 1992) (same).[3]

Here, as in *Kow*, *Stubbs*, *Leary*, *Spilotro*, *Winn*, and *Zemlyansky*, all evidence seized under the 1000 West Weatherford Street warrant must be suppressed.

## CONCLUSION

For the foregoing reason, the Court should suppress the evidence seized during the search of 1000 West Weatherford Street and the fruits of that evidence.

Dated:  March 12, 2021

Respectfully submitted,

/s/ Marlo P. Cadeddu
**Law Office of Marlo P. Cadeddu, P.C.**
State Bar No. 24028839
mc@marlocadeddu.com
3131 McKinney Avenue, Suite 600
Dallas, TX 75204
Tel. & Fax: (214) 220-9000

/s/ John D. Cline
**Law Office of John D. Cline**
CA Bar No. 237759
cline@johndclinelaw.com
50 California St., Suite 1500
San Francisco, CA 94946
Tel.: (415) 662-2260

**ATTORNEYS FOR RICHARD HALL**

---

[3] To the extent the government contends that circumstances exist that justify application of the good faith exception under *Allen*, *Shugart*, and *Beaumont*, we request an evidentiary hearing at which to contest the government's assertions.

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Ms. Adrienne Frasior, counsel for the government, on

March 11, 2021 regarding this motion.  The government is opposed to the motion.


    /s/   John D. Cline
    John D. Cline

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2021, a copy of the foregoing document was served by electronic transmission on all counsel of record via the Court's ECF system.

*/s/ Marlo P. Cadeddu*
Marlo P. Cadeddu