UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.   § | CRIMINAL CASE NO. 3:18-CR-623-S |
| § | |
| RICHARD SCOTT HALL (1)   § | |
| SCOTT SCHUSTER (2)   § | |
| DUSTIN RALL (3)   § | |

### FINDINGS, CONCLUSION, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's referral order, Doc. 614, the undersigned United States magistrate judge now considers *Defendant Richard Hall's Motion to Suppress Seized Evidence and the Fruits of That Evidence*, Doc. 347; *Defendant Scott Schuster's Motion to Suppress Evidence*, Doc. 473; and *Defendant Rall's Motion to Suppress Property*, Doc. 474. For the reasons stated below, each of the motions should be **DENIED**.

**A. BACKGROUND**

On September 8, 2016, a magistrate judge of this Court issued a warrant authorizing the search of premises located at 1000 W. Weatherford Street, Fort Worth, Texas, which housed businesses, including Rxpress Pharmacy, Xpress Compounding, and Tactical Health Care Partners ("The Pharmacies"). 3:16-MJ-713-BF; Dkt. 1. By way of incorporated attachments, the search warrant also specified the evidence that could be seized during the search warrant's execution. 3:16-MJ-713-BF; Dkt. 5 at passim.

The search warrant was executed on September 15, 2016. More than two years later, on December 12, 2018, an indictment was filed in this case charging Defendants with, *inter alia*,

conspiracy to defraud the government and receive kickbacks, as well as money laundering, all stemming from allegations that they defrauded federal health care programs by submitting false claims for reimbursement through the pharmacies they operated. Doc. 1, *passim*.[1] By the motions *sub judice*, Defendants Hall, Schuster, and Rall ("Defendants") seek to exclude the admission as evidence of those materials seized during the execution of the search warrants and the fruits of the same.

## B. PARTIES' ARGUMENTS

Defendants make essentially the same, somewhat conflated, arguments. First, they complain that the search warrant was not supported by probable cause and was overbroad in its scope and authorization of the items to be seized. Doc. 347 at 23-24; Doc. 473 at 13-16, 22-23; Doc. 474 at 9-11. Second, they contend that the good-faith exception to the exclusionary rule does not apply. Doc. 347 at 24-25; Doc. 473 at 23-25; Doc. 474 at 19-22. Third, they argue that the Court's search warrant does not particularly describe the items to be seized. Doc. 347 at 13-20; 473 at 10-11, 16-20; Doc. 474 at 8-14.

Not surprisingly, the Government disagrees. It argues that the good-faith exception indeed is applicable, and that as such, the Court need not independently determine whether the search was supported by probable cause. Doc. 487 at 15-20. The Government also contends that the identification of the places to be searched and items to be seized was sufficiently particularized. Doc. 487 at 20-28.

---

[1] A Superseding Indictment was filed on May 13, 2020, charging essentially the same offenses. Doc. 229.

2

Upon review of the search warrant application and affidavit, the search warrant itself, and the applicable law, the Court concludes the Government's position has merit.

## C.  APPLICABLE LAW

The Fourth Amendment of the United States Constitution guarantees that the–

> right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  While the Fourth Amendment prescribes no remedy for the conduct proscribed therein, the exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *United States v. Leon*, 468 U.S. 897, 906 (1984) (citing and quoting *United States v. Calandra*, 414 U.S. 338, 348, 354 (1974)).  Nevertheless, "[t]he Fourth Amendment's exclusionary rule does not bar the admission of evidence obtained with a warrant later found to be invalid so long as the executing officers acted in reasonable reliance on the warrant." *Leon*, 468 U.S. at 906-908.

"[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. "But even assuming that the rule effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id*. at 918-919.

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or

3

in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

*Id.* at 919.

The good-faith exception to the exclusionary rule applies when the probable cause for a search warrant "is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable." *Id.* at 919-20. It is only if the good-faith exception *does not apply*, that the Court should then "determine[ ] whether the magistrate had a substantial basis for finding probable cause." *United States v. Cavazos*, 288 F.3d 706, 710 (5th Cir. 2002) (citing *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) and *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129 (5th Cir. 1997).

**D. ANALYSIS**

   *1. Defendants Lack Standing to Contest the Search of the Pharmacies' Property*

As an initial matter, the Government contests Defendants' standing to challenge the search warrant and search. Defendant Hall and Schuster's arguments that they have standing to contest the search warrant and the search and seizure of the Pharmacies are mainly two-fold.[2] First, they claim standing by virtue of their ownership of the Pharmacies at the time of the search. Doc. 347 at 11-12; Doc. 473 at 12-13;   Second, each contends that he kept a personal office in the same location as the Pharmacies. Doc. 347 at 12-13. Doc. 473 at 12;   The Government counters that Defendants have not established that they have a privacy interest as individuals in the Pharmacies' property, including its computers and servers.

---

[2] Defendant Rall does not address standing in his motion. In his reply he merely suggests that he is a co-owner. Doc. 493 at 1-2. Nevertheless, the search warrant affidavit indicates that he is one of the registered owners of Rxpress Pharmacy in the records of the Texas Secretary of State. 3:16-MJ-713-BF, Dkt. 1 at 10.

The remedy sought by Defendants' motions to suppress is the exclusion of the evidence seized during the search of the Pharmacies and its fruits. Business entities like the Pharmacies have a Fourth Amendment right against unreasonable search and seizure. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 353 (1977). However, the Pharmacies are not Defendants in this criminal action. *See Rakas v. Illinois*, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). Thus, even assuming as they assert that Defendants are the principals of the Pharmacies, they cannot prevail on that basis alone. *See Id.* at 130 n.1 ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.") (citation omitted); *see also Williams v. Kunze*, 806 F.2d 594, 599 (5th Cir. 1986) ("An individual's status as the sole shareholder of a corporation is not always sufficient to confer upon him standing to assert the corporation's fourth amendment rights.") (citing *United States v. Britt*, 508 F.2d 1052, 1055 (5th Cir. 1975).

"Unless the shareholder, officer or employee can demonstrate a legitimate and reasonable expectation of privacy in the records seized, he lacks standing to challenge the search and seizure." *Kunze*, 806 F.2d at 599. Here, Defendants fail to demonstrate that they had a reasonable expectation of privacy in the records of the Pharmacies maintained in the common areas of the businesses or on business servers. *See Id.* Therefore, their lack of standing to challenge the search of the Pharmacies' premises and servers or the seizure of materials from the same is clear.

Defendants also contend, however, that they maintained private offices of the premises searched; and the Court finds that they would have a reasonable expectation of privacy in such.

Any such privacy interests would be limited to Defendants' personal office space, and not the property of the Pharmacies or property *shared* with the Pharmacies. Defendants do not identify what, if any, property *exclusive* to their personal office spaces was searched and seized or how law enforcement personnel searching the premises of the Pharmacies could have identified it as such. Again, to the extent Defendants *generally* seek suppression of items seized during the search of the Pharmacies, they lack standing.

Even assuming Defendants have standing to contest the search conducted September 8, 2016, at the premises located at 1000 W. Weatherford Street, and the related seizures, as detailed *infra*, their motions nevertheless fail.

### 2. *The Good-Faith Exception Operates to Defeat Defendants' Arguments that the Search Was Not Supported By Probable Cause*

Contrary to Defendants arguments, the application of the good-faith exception to the exclusionary rule effectively moots their arguments that the search warrant and its execution were not supported by probable cause. As stated previously, the search at issue here was conducted pursuant to a search warrant issued by a magistrate judge of this Court. As such, the Court must first determine whether the good-faith exception applies before undertaking any independent probable cause analysis of the affidavit upon which the warrant was issued. The Court finds that it does.

First, review of the search warrant affidavit reveals that it is far from "barebones." *See United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997) (a search warrant affidavit is barebones "if it so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable") (citing *United States v. Satterwhite*, 980 F.2d 317, 320-21 (5th Cir. 1992) ("'Bare bones' affidavits contain wholly conclusory statements, which lack

the facts and circumstances from which a magistrate can independently determine probable

cause." (citation omitted)). That is far from the case here.

The Government's response aptly summarizes the 25-page, probable-cause section of the

affidavit submitted in support of the search warrant application:

> SA McCardel [the affiant] described the evidence that established probable cause for the warrant. This information included interviews of approximately seventeen witnesses, including purported marketers (for example, Eric Twigg, Britt Hawrylak, Matt Hawrylak, and Nicholas Morano) and TRICARE beneficiaries (for example, Ryan Rafols, and James and Shirley Horan). SA McCardel also described the financial analysis that was done leading up to the warrant application, which revealed the extensive kickback scheme stemming from the pharmacy. At a high level, this information demonstrated that the pharmacy paid purported marketers for each prescription they recruited for which a claim was submitted to TRICARE. (*Id*. ¶¶ 25-33.) Indeed, beneficiaries and doctors were also paid kickbacks or offered incentives to participate in the scheme. (E.g., *id*. ¶¶ 32, 41, 44, 47, 52, 54, 57.) SA McCardel explained in the affidavit that defendant Richard Hall told Matt Hawrylak, a purported marketer: " 'TRICARE is paying off for you guys' which Matt stated referenced the amount of money they were paid by Rxpress related to the TRICARE prescription referrals to Rxpress." (*Id*. ¶ 33.) SA McCardel described how each month, the purported marketers received a report documenting every prescription referred to the pharmacy along with the amount that TRICARE reimbursed, minus the cost of goods sold. (*Id*.) The pharmacy paid the purported marketers as W-2 wage-earners, even though they were not bona fide employees of the pharmacy. (*Id*. ¶¶ 30-31.)

Doc. 487 at 12.[3] Further, Although Defendants nitpick certain statements in the affidavit, neither

suggests, much less proffers, any facts from which it can be gleaned or inferred that Special

Agent McCardel lied or omitted material information from it.[4] See *Leon*, 468 U.S. at 923 (the

---

[3] The Government cites to the copy of the Affidavit attached to Defendant Hall's motion to suppress as Doc. 474-2.

[4] Defendant Schuster's suggestion that the affiant's failure to provide additional details about the scope of the investigation, Doc. 473 at 9-10, was "key," is conclusory and lacks legal and factual support. Nothing about the details of the investigation Defendant Schuster contends were omitted would have defeated probable cause if included. *See United States v. Jarman*, 847 F.3d 259, 264–65 (5th Cir. 2017) (quoting *United States v. Robinson*, 741 F.3d 588, 595 (5th Cir. 2014); citing *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000)) (cleaned up).

good-faith exception does not apply when "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"). Indeed, Defendants' briefs give only short shrift to their arguments that the good-faith exception does not apply—long on law and short on relevant facts—despite the issue being controlling. *See* Doc. 347 at 24-25; Doc. 473 at 23-25; Doc. 474 at 19-22.

In sum, the Court concludes the good-faith exception to the exclusionary rule applies in this case. As such, the Court need not and does not independently determine whether the search warrant was supported by probable cause.

### 3. *The Search Warrant Was Sufficiently Particularized*.

Upon finding probable cause, the Court issued the search warrant at issue here, which specifically provided for the seizure of:

> All records, data and information constituting instrumentalities, evidence, or fruits of violations of Title 18, United States Code, Sections 1343 (Wire Fraud)287, 1035 (False Statements Related to Health Care Matters), 1347 (Health Care Fraud), and Title 42 United States Code, Section l320a-7b (Criminal penalties for acts involving Federal health care programs), including but not limited to:
>
> 1. Business records, documents, or communications of Rxpress Pharmacy, Xpress Compounding, or Tactical Health Care Partners[,] including;
>
>    a. Contracts, agreements, or arrangements for marketing, soliciting, selling, or promoting of prescription products,
>
>    b. Organization charts and/or other documentation related to management structure of listed entities,
>
>    c. Correspondence, including memos, letters, and e-mails between entities or officers, owners, managers, employees, marketers, doctors, and clients/customers,
>
>    d. Documents relating to the compensation structure of bonuses, incentives, or commissions paid to contractors, employees, or other individuals including marketers, beneficiaries, and doctors,

    e. Personnel files for any individual engaged in marketing, soliciting, selling, or promoting of prescription products,

    f. Corporate, business, and personal tax returns, including any quarterly employment tax returns,

    g. Documents relating to policies and procedures concerning the marketing, soliciting, selling, or promoting of prescription products,

    h. Documents relating to the reimbursement, billing, or coding of prescription products,

    i. Documents related to the waiver of co-payments for prescription products or,

    j. Documents relating to the circumstances under which a pharmacy may substitute or change the ingredients of a prescription products,

    k. Internal or external audit reports, including working papers, management responses, or other documents concerning the compliance with laws or regulations of marketing, soliciting, selling, or promoting of prescription products,

    l. Documents relating to any complaints, objections, or concerns about compliance with state or federal law relating to prescription products,

    m. Bank records or other financial documentation, including, but not limited to, ATM deposit or withdrawal receipts, bank statements, check books, and credit or debit card statements,

    n. Documents pertaining to the payment of commissions, or other form of remuneration, to individuals for the marketing, soliciting, selling, or promoting of prescription products or for patient or physician referrals,

2. Medical records, documents, or communications relating to shipping, billing, or interaction with patients, to include, but not limited to, payment of commissions, payment of remuneration to any beneficiary, or issuance of any compounded medication, including pain creams, scar creams, or multivitamins.

3. All communications, to include text messages, emails, instant messages, facsimiles, Apple iMessages, between Dustin Rall, Scott Schuster, Richard Hall, Lewis Hall, Jr., Quintan Cockerell, Lock Paret, Luke Zeutzius, Britt Hawrylak, and Matthew Hawrylak, doctors, and any other associate of Rxpress Pharmacy, Tactical Health Care Partners, Tiger Racing Team, or Zorin Holdings [that:]

    a. discuss, reference, or relate to insurance reimbursements, insurance companies, compound drugs, pharmaceutical representatives, recruiters, marketers, beneficiaries, doctors, pharmacies, pharmacists, billing agents,

9

or any other individual or entity associated with the submission of claims for reimbursement for any health care service or prescription drug, or the facilitation of payment to recruiters, marketers, doctors, beneficiaries or others for referral.

b. show or demonstrate connections or relationships such as ownership, control, responsibility, direction, or authorization businesses or entities.

4. Additionally, all computer equipment and the items listed above that are contained in any computer equipment as follows, and pertains to the above listed persons, businesses, or entities:

   a. Computer hardware, consisting of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data-processing devices (such as central processing units, memory typewriters, self-contained "laptop" or "notebook" computers, "palm pilots," I-pods, memory facsimile machines and "schedulers"); internal and peripheral storage devices (such as fixed disks, external hard drives, floppy disk drives and diskettes, USB storage devices, optical storage devices, transistor-like binary devices, read/write CD and DVD devices, and any and all storage devices); peripheral input/output devices (such as keyboards, printers, scanners, video display monitors, mouse devices); and related communications devices (such as modems, routers, cables and connections, recording equipment, RAM or ROM units); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

   b. Computer software, that is, digital information which can be interpreted by a computer and any of its related components to direct the way they work, as well as instruction manuals relating to the same. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, networking, graphics, accounting, presentations or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

   c. Electronic Storage Media, that is, any object or device upon which computer data can be stored. It includes external and internal hard drives, floppy disks, CDs, DVDs, MP3 devices, "flash" or "thumb" drives, tapes, Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, cellular phones, iPods, Bernoulli drives, electronic notebooks, SIM cards, SD-cards, and digital cameras.

   d. For any computer hard drive or other electronic media (hereinafter, "MEDIA") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

      i. evidence of user attribution showing who used or owned the MEDIA at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

      ii. passwords, encryption keys, and other access devices that may be necessary to access the MEDIA;

      iii. documentation and manuals that may be necessary to access the MEDIA or to conduct a forensic examination of the MEDIA.

5. As used above, the terms "documents," "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

6. The items described above may be searched and seized irrespective of whether they are stored or maintained in electronic, magnetic, optical; digital, or paper format. This warrant specifically authorizes the search and seizure of records maintained on computer storage media, including computer hard drives, diskettes, Compact Discs (CD), Digital Video Discs -(DVD), USB storage device ( e.g., thumb drives, external hard drives), or any other media capable of storing information in a form readable by a computer. This also includes all copies of the information described above that may be located on any handheld computers or other portable computing or data storage device, and any stored information that is maintained as archive or backup copies.

7. In order to obtain the above[-]described records, the agents are authorized to seize the computers and/or storage media and make a mirror image of the computers and/or storage media off-site for the purposes of searching. Upon completion of the off-site imaging, the agents will attempt to return the seized computers and/or storage media. In addition, if the information described above cannot be read and understood without the software or programs that created those files or records, the agents are authorized to seize such software and any documentation and manuals that describe the software and instruct on its installation and use.

3:16-MJ-713-BF; Dkt. 5 at 3-8.

As noted previously, under the Constitution, a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized," U.S. Const. amend. IV.

> The fourth amendment proscribes search warrants that permit a general, exploratory rummaging in a person's belongings. The items to be seized must be described with sufficient particularity such that the executing officer is left with no discretion to decide what may be seized. However, in circumstances where detailed particularity is impossible generic language suffices if it particularizes the types of items to be seized.

*Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986) (internal citations and quotation marks omitted). Still, "[s]ome interpretation [by searching officers] is unavoidable." *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012). In that event, "[o]fficers are not obliged to interpret (the warrant) narrowly," and only "[r]easonable specificity is required, not elaborate detail." *Id.*, quoting *United States v. Hill*, 19 F.3d 984, 987 (5th Cir.1994) (cleaned up).

As is clear from the language of the search warrant set out above, it was sufficiently particularized as to the places to be searched and the items to be seized. The warrant was not overbroad, nor did it operate as a "general warrant," since it specified the categories of items to be seized and further limited such items to those relevant to the specific criminal allegations. Stated differently, "the description of the documents [and other items] to be seized was not broader than what was justified by the showing of probable cause upon which the warrant was based," to-wit: an illegal fraud and kickback scheme of which the Pharmacies were an integral part. *Kunze*, 806 F.2d at 598-99 ("Where probable cause exists to believe that an entire business was merely a scheme to defraud, or that all the records of a business are likely to constitute evidence, a warrant authorizing the seizure of all such records and describing them in generic terms is sufficient to meet the particularity requirement of the fourth amendment.") (citations omitted). Defendants' assertions to the contrary lack relevant factual and legal basis.

As to Defendants' contentions that the search and seizure exceeded the scope of the warrant, they are wholly conclusory and offer no basis for relief. Although Defendants seek a

suppression remedy some five years after the execution of the search warrant and three years after indictment, neither Defendant identifies the specific items it contends were seized outside of the parameters of the search warrant. Thus, Defendants offer no basis for the Court to conclude that any such items exist, and their arguments only amount to general complaints.

### 4. *No Evidentiary Hearing Is Warranted*

When a defendant in a criminal case makes a substantial preliminary showing that the probable cause supporting a search warrant was based on a false statement or made with a reckless disregard for the truth, he is entitled to a separate hearing on his allegations. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). There is, however, "a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *United States v. Brown*, 298 F.3d 392, 407 (5th Cir. 2002). "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* As to allegations of the omission of information,

> [t]o warrant a *Franks* hearing, the exclusion of the information must reflect intentional or reckless misconduct by the affiant, and the omitted facts must be material. Clear proof of deliberate or reckless omission is not required.... At this stage, all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted facts *required to prevent technically true statements in the affidavit from being misleading*.

*Brown*, 298 F.3d at 407-408 (Dennis, J., concurring) (emphasis added).

In the case *sub judice*, Defendants wholly fail to make the requisite showing. As discussed *infra*, the thrust of Defendants' arguments is the purported inadequacy of the affidavit in support of the application for a search warrant to establish probable cause and lack of a

13

particularized warrant. For the reasons discussed *supra*, those arguments fail. And again, neither Defendant proffers any facts from which it can be reasonably inferred that the affiant deliberately lied or intentionally or recklessly omitted material facts from his affidavit. Thus, no evidentiary hearing is warranted.

### E.  CONCLUSION

For the foregoing reasons, *Defendant Richard Hall's Motion to Suppress Seized Evidence and the Fruits of That Evidence*, Doc. 347; *Defendant Scott Schuster's Motion to Suppress Evidence*, Doc. 473; and *Defendant Rall's Motion to Suppress Property*, Doc. 474, should be **DENIED**.

**SO RECOMMENDED** on December 12, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).