# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 3:18-CR-0623-S |
| | § | |
| RICHARD SCOTT HALL (1) | § | |
| SCOTT SCHUSTER (2) | § | |
| DUSTIN RALL (3) | § | |

**ORDER ACCEPTING THE FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

The Court referred Defendant Richard Hall's Motion to Suppress Seized Evidence and the Fruits of That Evidence ("Hall's Motion") [ECF No. 347], Defendant Scott Schuster's Motion to Suppress Evidence ("Schuster's Motion") [ECF No. 473], and Defendant Dustin Rall's Motion to Suppress Property ("Rall's Motion") [ECF No. 474] (collectively, "Motions") to the United States Magistrate Judge for consideration. *See* ECF No. 614. The Court received the Findings, Conclusion, and Recommendation of the United States Magistrate Judge ("Recommendation") [ECF No. 654], to which Defendants filed objections. *See* Objections to Findings and Recommendation on Defendants' Motions to Suppress ("Objections"), ECF No. 656. Having reviewed de novo the Recommendation, the Motions, Defendants' Objections, the United States' Response to Defendants' Objections [ECF No. 657], the United States' Consolidated Response to Defendants' Motions [ECF No. 487], Reply in Support of Rall's Motion [ECF No. 493], Reply in Support of Schuster's Motion [ECF No. 494], Reply in Support of Hall's Motion [ECF No. 496], and the applicable law, the Court **ACCEPTS** the Recommendation and **DENIES** Defendants' Motions, without an evidentiary hearing, for the reasons stated below.

## I.      BACKGROUND

On September 8, 2016, the United States Magistrate Judge issued a warrant authorizing a search of the premises at 1000 W. Weatherford Street, Fort Worth, Texas, which housed businesses including Rxpress Pharmacy, Xpress Compounding, and Tactical Health Care Partners (collectively, "Pharmacies"). *See* Application and Affidavit for Search Warrant, 3:16-MJ-713-BF, ECF No. 1 ("Affidavit"). Attachments to the warrant specified evidence to be seized during the search. *Id.* at 3-8. The warrant was supported by an affidavit written and signed by Joseph McCardel, special agent of the United States Department of Defense ("DOD"), Defense Criminal Investigative Service ("DCIS"). *Id.* at 9-33.

On September 15, 2016, agents executed the warrant. *See* Return, 3:16-MJ-713-BF, ECF No. 5 ("Executed Warrant") at 1. About two years later, on December 12, 2018, Defendants Richard Scott Hall, Scott Schuster, and Dustin Rall were indicted for alleged conduct in a scheme to defraud the United States in connection with TRICARE, a health care program of the DOD, and FECA, a program of the United States Department of Labor. *See* Indictment, ECF No. 1. A superseding indictment was issued on May 13, 2020. *See* Superseding Indictment, ECF No. 229.

Defendants moved to suppress evidence seized during the search of 1000 W. Weatherford Street and the fruits of that evidence. The Magistrate Judge concluded the search and seizure was constitutional and that this Court should deny Defendants' Motions. Defendants together assert four objections to the Recommendation, alleging that the Magistrate Judge: (1) "erroneously concludes that [D]efendants do not have standing"; (2) "erroneously concludes that the warrant was sufficiently particularized and thus not a general warrant"; (3) "ignores the reasons why the good-faith exception is inapplicable"; and (4) "fails to address arguments regarding the scope of the warrant and the scope of the seizure." Objs. 1-2.

2

## II.   ANALYSIS

The Court will first consider whether the good-faith exception applies. Next, the Court will address whether the warrant was sufficiently particularized, even if there was no reliance on the good-faith exception. The Court will then determine whether the timing of execution of the warrant was reasonable under the Fourth Amendment. Finally, the Court will address probable cause, standing, and Defendants' request for an evidentiary hearing.

### A.   *Good-Faith Exception*

In considering a Fourth Amendment challenge to a search or seizure conducted pursuant to a warrant, the Court must first consider whether such search or seizure "falls within the good-faith exception to the exclusionary rule." *United States v. Davis*, 226 F.3d 346, 350-51 (5th Cir. 2000) (citation omitted). If it does, the analysis ends; if it does not, the Court must "ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (cleaned up). Under the good-faith exception, "[e]vidence obtained by officers who reasonably relied in good faith upon the validity of a warrant is admissible, even if the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Alix*, 86 F.3d 429, 435 (5th Cir. 1996) (citing *United States v. Leon,* 468 U.S. 897, 922-23 (1984)).

The good-faith exception does not apply when (i) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (ii) officers rely on a warrant issued by a magistrate or judge who has "wholly abandoned [the] judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979)"; (iii) officers rely on a warrant "based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely

unreasonable"; or (iv) the warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Cherna*, 184 F.3d at 407-08 (cleaned up).

Defendants assert the exception is inapplicable because (i) the case agent misled the Magistrate Judge by failing to provide him with material information, *see* Schuster's Mot. 3-4, (ii) the warrant lacked sufficient probable cause, *see* Objs. 6-7, and (iii) the warrant was facially deficient because it allegedly failed to incorporate the supporting affidavit and because the Government has not demonstrated the affidavit was shown to executing agents. *Id.*

### i.    *Misled by False Information*

"To impeach the warrant" based on false information, "[Defendants] must show that [the agent] either deliberately or recklessly misled the magistrate and that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant." *Davis*, 226 F.3d at 351 (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). "The necessary falsehood can be perpetrated by omission as well as commission, but the omission must be of information that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause." *Id.* (citations omitted).

Defendants assert the good-faith exception does not apply because the Government failed to disclose information regarding concurrent investigations of a separate entity, ProGen, located at 1000 W. Weatherford Street, and Defendants Schuster and Rall and co-Defendant John Le, who maintained offices at that address. Schuster's Mot. 3-4; *see also* Rall's Mot. 17 n.41. Additionally, Defendants argue the Government failed to disclose the fact that Rxpress's business operations were "predominantly non-federal-insurance related" to the Magistrate Judge. Schuster's Mot. 3-4.

The Court agrees with the Magistrate Judge's conclusion that Defendants failed to offer evidence that "Special Agent McCardel lied or omitted material information" in his affidavit in support of the warrant. Recommendation 7 (citing *Leon*, 468 U.S. at 923). Defendants' conclusory allegations do not indicate how the omission of this information, or how the inclusion of this information, if provided, undermined probable cause. *See Davis*, 226 F.3d at 351. Nor do Defendants demonstrate with evidence that Agent McCardel omitted information deliberately or recklessly. *See id.* The affidavit is not required to set forth every fact learned from the investigation, and it does not purport to do so. *See* Affidavit 12 ¶ 14. The existence of the ongoing, concurrent investigations does not undermine the probable cause that existed for the present investigation. *See infra* Section II(A)(ii) (describing probable cause supporting the warrant). And the omission of the nature of Rxpress's business operations as "predominantly non-federal-insurance related" does not defeat probable cause. The affidavit establishes that Rxpress is an enrolled provider in the TRICARE program, may share owners with Xpress Compounding, has "submitted claims resulting in TRICARE payments of $597,970 since January of 2013," and is cited in witness statements detailing alleged fraud. *See* Affidavit 10-16 ¶¶ 8, 10, 22, 30.

### ii.    *Reliance on Affidavit Lacking Probable Cause*

"An officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a 'bare bones affidavit.'" *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997) (quoting *Alix*, 86 F.3d at 435). "An affidavit is 'bare bones' if it [is] so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable." *Id.* (citation omitted). "Bare bones affidavits typically contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (internal

quotation marks and citation omitted). An affidavit that "furnishe[s] adequate 'information to allow the conclusion that a fair probability existed that seizable evidence would be found' on [the defendant's] premises" is not bare bones. *Cisneros*, 112 F.3d at 1279 (quoting *United States v. Restrepo*, 994 F.2d 173, 189 (5th Cir. 1993)); *see also Alix*, 86 F.3d at 435 (holding affidavit that "detailed the findings of both federal and local law enforcement agencies," included corroborating information from informants, and contained information from "business and telephone records indicating that" records could be found in a residence was more than "bare bones").

The Court agrees with the Magistrate Judge's conclusion that the affidavit, "far from 'barebones,'" sufficiently laid out, in twenty-five pages, the probable cause supporting the warrant application, incorporating interview information from about seventeen witnesses including marketers and beneficiaries, financial analysis revealing the scope and facilitation of payments, and methods of reporting. Recommendation 6-7 (citing *Cisneros*, 112 F.3d at 1278, and *United States v. Satterwhite*, 980 F.2d 317, 320-21 (5th Cir. 1992)). The affidavit explains how the alleged kickback scheme operated, why certain records, like signed prescriptions and payment records, would be found at the location of the search, and how these records were stored, namely in both physical and electronic form. *See* Affidavit 9-25. Ultimately, the Court holds the reliance on the warrant was "objectively reasonable," and does not defeat the applicability of the exception. *Cisneros*, 112 F.3d at 1279.

### iii.   *Facial Deficiency of Warrant*

"[A] warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923. Defendants allege the warrant is facially deficient because: (1)

attachments to the warrant were not properly incorporated; and (2) the affidavit was not properly incorporated. The Court will consider each argument in turn.

Defendants cite *Groh v. Ramirez* in support of their position that the warrant was facially defective. 540 U.S. 551 (2004). But Defendants' reliance on *Groh* is misplaced. There, the Supreme Court held the good-faith exception did not apply where the warrant failed to identify items to be seized because it "did not incorporate by reference the itemized list contained in the application" and merely identified a "single dwelling residence . . . blue in color" as the item to be seized. *Id.* at 554-55, 558. The Supreme Court noted, "unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the [m]agistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Id.* at 560. Since *Groh*, the Fifth Circuit has held that "[t]he law permits an affidavit incorporated by reference to amplify particularity." *United States v. Triplett*, 684 F.3d 500, 505 (5th Cir. 2012).

Here, unlike in *Groh*, the warrant properly incorporated the attachments listing the place to be searched and the items to be seized by expressly stating "SEE ATTACHMENT A" and "SEE ATTACHMENT B" on its face. *See* Warrant, ECF No. 347-1 at 2. *Contra Groh*, 540 U.S. at 558 (holding warrant to be "so obviously deficient" because it failed to "describe the items to be seized *at all*" and because the warrant, affidavit, and application "did not incorporate other documents by reference"). Further, these two documents were attached to the warrant at the time of execution. *See* Government's Mot. for Recons., ECF No. 129 ("Mot. for Recons.") at 14 ("Specifically, on the day of the search, agents were provided with copies of the warrant and the corresponding attachments."); Executed Warrant. Attachment A specified the location to be searched as a "large multi-story red brick building," located at 1000 W. Weatherford St., and the suites within; it further

7

described, inter alia, the entrances and a window labeled with "Rxpress" and "Xpress." Executed Warrant 2. Attachment B listed items to be seized, specifying a list of four broad categories of items with over twenty subcategories, provided limiting instructions through the use of alleged relevant participants, entities, and tools of fraud, and tied the items to be seized to the relevant offenses. *Id.* at 3-8. Therefore, officers could identify the place to be searched and the items to be seized on the face of the warrant and its incorporated attachments.

Next, Defendants assert the warrant "did not even incorporate by reference the affidavit supporting it, and the government proffers no basis to find that the [a]ffidavit was even shown to the executing officers." Objs. 5. According to Defendants, without incorporation of the affidavit, the warrant was facially defective, and the good-faith exception cannot apply. "[The Fifth Circuit's] precedents demonstrate that the Fourth Amendment permits a warrant to incorporate documents by reference, including sealed documents[.]" *Schanzle v. Haberman*, 831 F. App'x 103, 105 (5th Cir. 2020) (internal citations and footnote omitted); *see also United States v. Aguirre*, 664 F.3d 606, 614 (5th Cir. 2011) ("In reviewing challenges to particularity we read the warrant as a whole, including its accompanying affidavit and attachments." (citation omitted)). Even when a warrant depends on an affidavit for sufficient particularization and references that affidavit, but fails to incorporate and attach the affidavit to the warrant, the Fifth Circuit has found officers' reliance on that warrant to be reasonable. *Cherna*, 184 F.3d at 412.

In *Cherna*, the Fifth Circuit determined that officers' reliance on the magistrate judge's "issuance of a warrant, even though he simultaneously sealed the affidavit on which it was based" was appropriate because "the affidavit explained in detail the alleged mail and wire fraud scheme that was the target of the investigation and search, the officer in charge of the search, Smitherman, was the affiant, and the other FBI agents who participated in the search read the affidavit before

beginning it." *Id.* at 412-13. Further, the attachment in that case, "expressly mentioned in the warrant and attached thereto, referred to [the agent's] affidavit and described in considerable detail twenty-six categories of evidence to be seized." *Id.* at 412. For these reasons, the Fifth Circuit held the good-faith exception applied.

Here, the Magistrate Judge placed the affidavit on which probable cause was based under seal; therefore, the affidavit, while referenced twice in the warrant and attached to it at the time of application, may not have been attached to the warrant at the time of execution. *See* Warrant, ECF No. 347-1 at 1. *Compare* Affidavit with Executed Warrant. But like the warrant in *Cherna*, the non-attachment of the affidavit does not render the warrant here "so obviously defective that the officers could not reasonably have relied on it." 184 F.3d at 412. Attachment B to the warrant specified over twenty subcategories of items related to alleged relevant participants, entities, and tools of fraud. *See id.* (holding that good-faith exception applied when an attachment incorporated into and attached to the warrant "described in considerable detail twenty-six categories of evidence to be seized"). And the warrant and the affidavit were separately reviewed and signed by the Magistrate Judge at the time of application, "reduc[ing] the concern that [the magistrate judge] did not agree to the scope of the search as defined and limited therein," "preventing a 'general' search," and achieving "one of the core purposes of the Fourth Amendment," *United States v. Allen*, 625 F.3d 830, 839 (5th Cir. 2010).

As to Defendants' claim there is no evidence that the affidavit was shown to the executing officers, there are two issues with this contention. First, Defendants—not the Government—bear the "burden of proof in challenging the validity of [a warrant's] execution or service." *United States v. Vigo*, 413 F.2d 691, 693 (5th Cir. 1969). Second, the record indicates that Agent McCardel, the affiant, supervised or participated in the search, attested to the seizure of appropriate

documents, and worked with officers from agencies involved in the ongoing investigation. *See* Executed Warrant at 1; Inventory List, 3:16-MJ-713-BF, ECF No. 5-1 (listing items seized by officers from DCIS, HHS/OIG, VA OIG, and FBI); Affidavit 10 (stating the DCIS's investigation is supported by the FBI, HHS-OIG, DOL-OIG, and VA-OIG). This involvement indicates the officers "knew what was to be searched for." *United States v. Beaumont*, 972 F.2d 553, 562 (5th Cir. 1992) (upholding warrant when "there was a probable cause determination made by the state judge, the affidavit provided specific information of the objects of the search, the executing officer was the affiant, the additional officers making the search knew what was to be searched for, and, finally, the warrant could easily have been made valid by the insertion of the phrase 'see attached affidavit'" (footnote omitted)). Therefore, any alleged deficiencies in the warrant do not negate application of the good-faith exception under these circumstances.

## B.  *Sufficient Particularization of Warrant*

Where a court has determined the good-faith exception applies, "it is unnecessary to consider [the defendant's] assertion the warrant was impermissibly general." *United States v. Edwards*, No. 22-10206, 2023 WL 234147, at *2 (5th Cir. Jan. 17, 2023). Regardless, the Court will address Defendants' arguments regarding the sufficiency of the warrant outside of the good-faith exception.

To pass constitutional muster, a warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. The Court must "ask if the description in the warrant would permit an executing officer to reasonably know what items are to be seized." *Beaumont*, 972 F.2d at 560. To avoid generality, the descriptions must be sufficiently particular as to leave "nothing to the discretion of the officer executing the warrant." *Allen*, 625 F.3d at 835 (cleaned up). However, the Fifth Circuit has noted that "[s]ome

interpretation is unavoidable." *Triplett*, 684 F.3d at 504. "Officers are 'not obliged to interpret [the warrant] narrowly,'" and "[r]easonable specificity is required, not 'elaborate detail.'" *Id.* (first alteration in original) (quoting *United States v. Hill*, 19 F.3d 984, 987 (5th Cir. 1994)).

Defendants make five objections with respect to the warrant's particularization: (1) inclusion of the term "not limited to" granted the executing agents too much discretion; (2) the alleged failure to incorporate the affidavit by reference and show it to the executing officers rendered the warrant general; (3) without incorporation of the affidavit, the warrant was insufficiently particularized because it referenced broad statutes; (4) without incorporation of the affidavit, the warrant lacked necessary date restrictions and other limiting information; and (5) an all records search was inappropriate because the Magistrate Judge did not conclude the businesses were permeated by fraud.

### i.    "Including, But Not Limited To"

The words "including but not limited to" do not render the warrant facially invalid, nor do they defeat the particularity of the warrant. The Fifth Circuit has found a warrant sufficiently particular where it included the phrase "including but not limited to" in attachments specifying items to be seized. *See, e.g.*, *James v. United States*, 416 F.2d 467, 473 (5th Cir. 1969) (holding that description of "articles to be seized as 'gambling paraphernalia, *including but not limited to* dice, crap tables, wires, magnets, coils, solenoid switches, records, sales receipts, customers' lists, shipping orders, supplies, machine equipment, machine tools and hand tools for the manufacture of gambling paraphernalia, *including but not limited to* dice, crap tables and cards,' etc., [was not] vague and insufficient" (emphasis added)); *United States v. Moser*, 123 F.3d 813, 823 (5th Cir. 1997) (affirming sufficient particularization of warrant including same phrase); *see also Cherna*, 184 F.3d at 414 (upholding the phrase in the context of applicability of the good-faith exception

where the phrase followed seizure of items related to mail and wire fraud); *Edwards*, 2023 WL 234147, at *1 (upholding similar phrase in the context of the good-faith exception where the phrase was followed by items "usually expected" to be used with the suspected crime). By contrast, in *United States v. Cook*, the Fifth Circuit held a warrant to be impermissibly general where it authorized seizure of "illegally obtained films . . . not limited to the motion pictures described in the affidavit" because it was "clear that the magistrate either was not given or did not use available directions to specify tapes and films and to describe methods by which the items to be seized could be determined." 657 F.2d 730, 733-34 (5th Cir. 1981).

Here, the phrase "including but not limited to" did not grant executing agents unbridled authority to determine whether items found at the search location fell within a certain category of offenses. Similar to the warrant in *Edwards*, the warrant "provided a list of items usually expected to be used" to commit wire fraud, make false statements related to health care matters, and commit health care fraud, therefore "linking the items to be seized and searched with the suspected criminal offense." 2023 WL 234147, at *1. And as stated above, Attachment B tied seizure of various items to alleged participants and/or the suspected activity. Unlike the warrant in *Cook*, this warrant, supported by an underlying affidavit and reviewed and signed by the Magistrate Judge, provided limiting instructions to determine whether items were relevant to the offense. *See* 657 F.2d at 734; *supra* Section II(A)(iii).

### ii.     *Incorporation of Affidavit*

The Court agrees with the Magistrate Judge that the warrant was sufficiently particularized even if the affidavit was not incorporated. As discussed above, even if the Court considers only Attachments A and B to the warrant, which Defendants do not dispute were incorporated and attached to the warrant at the time of execution, the warrant provides a description of the place to

be searched and a list of items to be seized that are particularized. *See Aguirre*, 664 F.3d at 614 ("In reviewing challenges to particularity we read the warrant as a whole, including its accompanying . . . attachments." (citation omitted)). Because this warrant does not "contain[] only the barest of generalized statements," it does not require reliance on an incorporated affidavit. *Beaumont*, 972 F.2d at 561.

### iii.   Statutory References

Defendants argue that the warrant's references to "[a]ll records, data and information constituting instrumentalities, evidence, or fruits of violations of" statutes regarding wire fraud, false statements related to health care matters, health care fraud, and criminal penalties for acts involving federal health care programs are overbroad and "realistically constitute no limitation at all on the scope of an otherwise overbroad warrant and cannot save it." Objs. 6 (quoting *United States v. Maxwell*, 920 F.2d 1028, 1033 (D.C. Cir. 1990)). But Defendants ignore the meaningful guidance provided in the warrant that the Court has previously discussed, including Attachment B's listing of categories of data to be seized, *see supra* Section II(A)(iii) (describing tailoring of items), definitions of generic terms, and guidance on the manner in which agents may seize the materials. Finally, within the categories of data to be seized, there are specific types of materials that may be used in connection with the alleged fraudulent conduct. Therefore, the Court finds that the warrant was sufficient. *See United States v. Van Meter*, 280 F. App'x 394, 396 (5th Cir. 2008) (affirming warrant was sufficiently particularized when it "cited the statute criminalizing tax evasion and included limiting language, itemizing what records could be seized," in an attached, itemized list).

### iv.    Available Limitations

Defendants argue that the warrant is not sufficiently particularized because it could have been limited by "available" categories of data, including time frame, names of "physicians, patients, [and] marketers," and information about other businesses at the location. Rall's Mot. 6. There is no requirement, however, that a warrant must limit itself to known conspirators, provide all known information, or include time frames. As long as the descriptions in the warrant would "permit an executing officer to reasonably know what items are to be seized," as it does here, the warrant is sufficiently particular. *Beaumont,* 972 F.2d at 560; *see also Davis*, 226 F.3d at 352 (upholding warrant and explaining when "officers made some attempt to narrow the categories of evidence as much as possible," including limiting "the documents to be seized by date *or* subject matter in many cases," the warrant may be sufficiently particularized (emphasis added)).

### v.    All-Records Search

Defendants allege that the warrant was overly broad because it authorized agents to seize "virtually every business, medical, communication, and electronic record of both of the pharmacies." Schuster's Mot. 10. Where all of the records of a business are likely to constitute evidence, a warrant "may satisfy the requirements of the Fourth Amendment even though it describes the objects to be seized only in generic terms." *United States v. Humphrey*, 104 F.3d 65, 69 (5th Cir. 1997) (citations omitted); *see Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986). Additionally, "in the investigation of fraud cases, it is difficult—if not impossible—for investigators to discover the precise method and instrumentalities used in perpetuating the fraud before conducting an actual search." *United States v. Simpson*, No. 3:09-CR-249-D-06, 2011 WL 721912, at *5 (N.D. Tex. Mar. 2, 2011) (quoting *United States v. Cherna,* No. 3:98–CR–072–T, slip op. at 3 (N.D. Tex. July 2, 1998), *aff'd*, 184 F.3d 403 (5th Cir. 1999)).

14

The warrant in this case "delineated in as much detail as is practicable" the categories of data "for investigating the kind of fraud indicated in this case," *Davis*, 226 F.3d at 352, especially given that the alleged scheme involved multiple parties and different types of records in physical and electronic format. *See Simpson*, 2011 WL 721912, at *5 (discussing a court's approval of a warrant that "went to some painstaking effort to describe in detail different possible forms of the business records" in light of the fact that the warrant "dealt with an investigation of a number of individuals, companies, and separate possible crimes" (citation omitted)). To the extent the seizure of electronic materials amounted to an all records search, the Fifth Circuit has upheld seizure of entire electronic devices for off-site imaging and search where there was reason to believe evidence would be found on the computer and there was a protocol in place to conduct that search. Such was the case in the present case. *See Triplett*, 684 F.3d at 505 ("[A] computer search may be as extensive as reasonably required to locate the items described in the warrant based on probable cause." (internal quotation marks and citation omitted)). And because much of the evidence was in electronic form, there was no "practical substitute for actually looking in many (perhaps all) folders." *See id.* at 505; *Kunze*, 806 F.2d at 598.

Moreover, it is significant that the search at issue was of a business rather than a residence. In *Humphrey*, despite heightened Fourth Amendment protection of residential homes, the Fifth Circuit upheld an all-records search of a residence based on a warrant listing four categories of information to be seized, supported by a three-page affidavit. *See* 104 F.3d at 68-69. The warrant described the items for seizure generally. *Id.* at 68 & n.1. Holding that "the Fourth Amendment requires much closer scrutiny of an all records search of a residence," the court found that "the search warrant was valid in the light of the pervasive nature of the fraud, the considerable overlap of the Humphreys' business and personal lives, and the limitation of the warrant to records

pertaining to financial transactions." *Id.* at 69. In this case: (1) there is evidence of pervasive fraud; (2) the Pharmacies have submitted more than $56,000,000 in TRICARE claims combined at their *business* address; and (3) the warrant was supported by a 25-page affidavit with information from seventeen witness and independent investigation from at least five agencies. Affidavit ¶¶ 22-23. Under these circumstances, it strains credulity to argue that the warrant, which lists with specificity the evidence that may be seized, should not be upheld. Accordingly, the scope of the search as authorized by the Magistrate Judge was permissible.

### C. *Reasonableness of Method of Execution*

Defendants argue that the Government violated the Fourth Amendment by failing to conduct a post-seizure review of seized materials within a reasonable time. *See* Schuster's Mot. 13-14; Rall's Mot. 11-12, 20, 23-25; Objs. 8.

Even if a warrant is facially valid, suppression may be required when the warrant is executed in an unreasonable manner. "The general touchstone of reasonableness which governs the Fourth Amendment analysis [also] governs the method of execution of the warrant." *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) (cleaned up). The Fourth Amendment does not require a specific time frame for a search or seizure to occur or duration. *Id.* "Courts have therefore consistently permitted some delay in the execution of search warrants involving computers because of the complexity of the search and they often restrict their analysis of the delay . . . to considering only whether the delay rendered the warrants stale." *Id.* (cleaned up).

The Fifth Circuit has previously considered a reasonableness challenge based on the duration of a post-seizure review of data. In *Jarman*, agents seized several hard drives and computers from the defendant's home pursuant to a search warrant. *Id.* at 263. A taint team, or team authorized to screen seized data for "potentially privileged material before turning it over to

the prosecution team," took approximately eight months to review the data. *Id.* The Government

then completed its review less than four months after it received the last of the equipment. *Id.* In

total, the review took twenty-three months to complete. *Id.* at 267. The Fifth Circuit found this

delay reasonable.

The Fifth Circuit distinguished *Jarman* from *United States v. Metter*, 860 F. Supp. 2d 205

(E.D.N.Y. 2012), based on the fact that in *Metter*, the Government, acting in bad faith, "had not

even begun to 'conduct[] its [privilege] review of the [electronic] evidence seized' fifteen months

after the warrant was executed and had 'no plans whatsoever to *begin* review of that data.'" 847

F.3d at 267 (alterations in original) (quoting *Metter*, 860 F. Supp. 2d at 211, 215). Further, the

Fifth Circuit held: (1) the duration of the review was "reasonable under the circumstances" because

the "taint process . . . was designed to protect [the defendant's] clients' privileged information";

(2) the periods of review were "typical periods of delay in executing warrants that courts have

permitted due to the complexity involved in searching computers"; and (3) the defendant did not

assert "that the delay caused the warrant to become stale," noting that "numerous cases hold that

a delay of several months or even years between the seizure of electronic evidence and the

completion of the government's review . . . is reasonable and does not render the warrant stale."

*Id.* at 266-67 (cleaned up).

The warrant here, like the warrants in *Metter* and *Jarman*, authorized the Government to

seize computers and other storage media to make a "mirror image" of them "for the purposes of

searching." Affidavit 7 ¶ 7. "Upon completion of the off-site imaging, the agents" were to "attempt

to return" the seized items. *Id.* The following is a timeline of events:

- On September 15, 2016, the agents seized computers and hard drives containing over eight terabytes of electronic data. Objs. 3. The Government stated that "[i]mmediately after the search warrant was executed" it "began to scan the hard-copy documents and simultaneously began to process the large quantity of

electronic data stored across various devices imaged pursuant to the warrant," but "[d]ue to the volume of data, limited resources, and technical hurdles, this process took months." Mot. for Recons. 5.

- On September 26, 2016, counsel for Rxpress and Xpress Compounding ("Pharmacy Counsel") sent a letter to the Government explaining that privileged documents may have been seized and requesting implementation of a filter team. *Id.* at 4-5.

- The Government put in place a filter team and gave Pharmacy Counsel the opportunity to provide attorney names and contact information to segregate potentially privileged documents. *Id.* at 5.

- On November 28, 2016, Pharmacy Counsel supplied a list of terms for the filter team to use to identify potentially privileged information. *Id.*

- On December 12, 2018, Defendants were indicted. *Id.* at 5-6. During this time, the filter team was still reviewing segregated materials using the terms provided by Pharmacy Counsel. *Id.*

- On February 11, 2019, the Government filed its Application for Protective Order for Limiting Disclosure of Discovery Materials, ECF No. 101.

- On February 14, 2019, Defendants responded to the Government's motion for a protective order and indicated, for the first time, that sensitive materials may have been seized. *See* ECF Nos. 103, 105, 114. The Government states, "out of an abundance of caution," it "requested from defense counsel any additional search terms that would assist in identifying and segregating any potentially privileged information." Mot. for Recons. 6-7. Defendants "did not provide additional terms," *id.* at 7, though Defendants argued Pharmacy Counsel asserted privilege on their behalf too, Tr. of April 24, 2019, Hr'g, ECF No. 131 at 9:8-20.

- On March 22, 2019, the Government requested permission for "the Government filter team to produce potentially privileged documents and attachments to all counsel for Defendants." Mot. for Entry of Order Under Fed. R. Evid. 502(d) and in Accordance with Fed. R. Crim. P. 16, ECF No. 117 at 1. Counsel for Defendants objected and asserted privilege over seized documents. *See* ECF No. 120.

- On April 24, 2019, the Magistrate Judge at a hearing denied the Government's 502(d) motion and ordered the Government to return any evidence that was outside of the parameters of the warrant or protected by privilege or other legal protection. *See* Electronic Order, ECF No. 132. On the record, the Government stated it had not begun its own review of materials, as the materials had yet to be uploaded to its review platform. Tr. of April 24, 2019, Hr'g, ECF No. 131 at 8:19-9:7. The Government explained that the filter team determined what materials were within

and outside the scope of the warrant, but it had not returned all potentially privileged documents to Defendants. *Id.* at 22:19-23:1.

- On May 6, 2019, the Government moved for reconsideration, and the Magistrate Judge stayed the order pending a ruling on the motion. Government Filter Team's Mot. to Clarify Order Limiting Disclosure of Search Warrant Materials, ECF No. 253 ("Motion to Clarify") at 3.

- In July and August 2019, the filter team produced items that were identified as potentially privileged based on the use of provided search terms to Pharmacy Counsel. *See id.*

- At the September 23, 2019, hearing on the Government's Motion for Reconsideration, the Magistrate Judge vacated the order to the extent it ordered the Government to return evidence, noting the evidence had been imaged and Defendants retained possession of the items. Tr. of September 23, 2019, Hr'g, ECF No. 193 at 5:1-5, 27:20-28:5, 28:17-21, 29:4-10. But the Magistrate Judge prohibited the Government from disseminating property not authorized by the Warrant or privilege. *Id.* at 28:21-29:3. The Government confirmed segregated materials had been returned and there would be further production of documents. *Id.* at 34:3-14.

- On January 15, 2021, Defendants filed motions for protective orders, which the Magistrate Judge granted on April 5, 2021, ordering the Government "not to make any use of, disclose, or disseminate any of the documents listed on [Defendants'] privilege log[s]." *See* Electronic Orders, ECF Nos. 366-68.

- Over the next couple of months, Defendants submitted other filings related to protecting privileged materials. *See, e.g.*, ECF No. 376 (moving to submit Defendant Rall's amended privileged log); ECF No. 400 (granting *in camera* review of Rall's documents); ECF No. 441 (moving for return of Rall's property).

The duration of this post-seizure review does not run afoul of the Fourth Amendment. Unlike in *Metter* and *Jarman*, the Government imaged files with assistance from a pharmacy employee, the system administrator, and only "targeted materials to image from the servers based on the warrant and the corresponding attachments" to ensure proper scope. Mot. for Recons. 14.[1] In contrast to the Government in *Metter*, the Government in this case set up its taint team shortly

---

[1] The Government states it took inventory of the hard copy materials and confirmed the "subject matter falls squarely within the purview of the warrant." Mot. for Recons. 14. Further, the Government asserted its prosecution team has "avoided reviewing potentially privileged materials." *Id.*

after executing the warrant and in response to Pharmacy Counsel's letter, and the filter team began some processing of materials immediately after seizure. Mot. for Recons. 5. Further, in *Metter*, "[t]he government . . . failed to commence the review, despite repeated requests from defense counsel and directions from the Court to do so." 860 F. Supp. 2d at 216. In this case, the Government commenced the review and took steps to comply with the Magistrate Judge's order after the April 24, 2019, hearing. In contrast to the facts underlying *Metter*, the Government here provided a reason for its delay, namely "the volume of data, limited resources, and technical hurdles." Mot. for Recons. 5. The delay also did not render the information in the warrant stale. Nor do Defendants claim that it did so. *See Jarman.* 847 F.3d at 267.

And even if the duration was deemed unreasonable, this would not trigger the exclusionary rule. To do so, the Government's "conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Allen*, 625 F.3d at 837 (citation omitted). "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* For the reasons stated above and based on the Court's review of the timeline of this case, the Court holds that the conduct at issue is not "sufficiently culpable," "deliberate," reckless, or grossly negligent.[2] *Id.* at 837.

---

[2] Further, where seized items "exceed[] the scope of the warrant," the remedy is "suppression of those items," not "invalidation of the search." *United States v. USPlabs*, LLC, No. 3:15-CR-496-L, 2019 WL 918276, at *15 (N.D. Tex. Feb. 24, 2019) (quoting *Cook*, 657 F.2d at 735 n.5). "[U]nder the 'severability' doctrine, items that are illegally seized during the execution of a valid warrant do not affect the admissibility of evidence legally obtained while executing the warrant." *Id.* (alteration in original) (quoting *United States v. Hamilton*, 931 F.2d 1046, 1054 (5th Cir. 1991)). "Consequently, if a court finds that certain items were illegally seized, even though the warrant itself was not facially defective, the admissibility of the other legally seized items is unaffected." *Id.* (quoting *United States v. Khalid*, 41 F.3d 661 (5th Cir. 1994)). To the extent any documents were impermissibly seized, the seizure did not disturb the validity of the warrant or its execution. *See United States v. Loe*, 248 F.3d 449, 461 (5th Cir. 2001) ("Although we are troubled by the scope of the search conducted, we are unprepared to say that the items seized should be suppressed on the basis that they exceeded the terms of the warrant.").

20

### D. *Probable Cause and Standing*

The Court "need not independently determine whether the search warrant was supported by probable cause" because the good-faith exception is applicable. Recommendation 8; *see also Cherna*, 184 F.3d at 407. The Court also need not reach the issue of standing "based on [the] conclusion that the good-faith exception to the exclusionary rule applies." *United States v. Shugart*, 117 F.3d 838, 843 n.4 (5th Cir. 1997).

### E. *Request for Evidentiary Hearing*

"To obtain a *Franks* hearing on a suppression motion, defendant challenging the validity of a warrant affidavit must make a substantial preliminary showing that: (1) affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the affidavit or omitted material information; and (2) the remaining portion of the affidavit, or the affidavit with the omitted information included, is insufficient to support a finding of probable cause." *Edwards*, 2023 WL 234147, at *2 (internal citation marks and quotation omitted). "There is, however, 'a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.'" Recommendation 13 (quoting *United States v. Brown*, 298 F.3d 392, 407 (5th Cir. 2002)).

The Magistrate Judge correctly concluded that Defendants fail to make the requisite showing. The Court disagrees with Defendants' assertions regarding the good-faith exception, including the arguments that the affidavit supporting probable cause was inadequate and that the warrant was not sufficiently particularized. Further, Defendants have not "proffer[ed] any facts from which it can be reasonably inferred that the affiant deliberately lied or intentionally or recklessly omitted material facts from his affidavit," or demonstrated that any omission would

have affected the determination of probable cause. *Id.* at 14. Therefore, the Court denies Defendants' request for an evidentiary hearing.

### III.     CONCLUSION

For the reasons stated above, the Court **ACCEPTS** the Findings, Conclusion, and Recommendation of the United States Magistrate Judge [ECF No. 654] with clarifications in response to the Objections and **DENIES** Defendant Richard Hall's Motion to Suppress Seized Evidence and the Fruits of That Evidence [ECF No. 347], Defendant Scott Schuster's Motion to Suppress Evidence [ECF No. 473], and Defendant Dustin Rall's Motion to Suppress Property [ECF No. 474].

**SO ORDERED.**

SIGNED March 29, 2023.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**