UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL CASE NO. 3:18-CR-623-S |
| § | |
| RICHARD SCOTT HALL (1) § | |
| SCOTT SCHUSTER (2) § | |
| DUSTIN RALL (3) § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the *Owner Defendants' Motion to Compel Production of Discovery and Motion for Order Under the Due Process Protections Act*. Doc. 604. Based on "the principles of *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); and Rules 6 and 16 of the Federal Rules of Criminal Procedure," Defendants Richard Hall, Scott Schuster, and Dustin Rall ("Defendants") seek the production of (1) transcripts of grand jury witness testimony, (2) case agents' notes, (3) "all documents and information relating to evidence of cooperating witnesses' and alleged co-conspirators' criminal activity and bias, including sealed sentencing materials," and (4) "all policies and procedures applicable to the filter team and its review of materials for this case." Upon review, the relief requested by Defendants is **DENIED**.

**A.  APPLICABLE LAW**

The Federal Rules of Criminal Procedure generally govern what information is discoverable and when a party may obtain such information in a criminal case. *United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977). "As a matter of general construction, the measure

of discovery permitted by the Rules of Criminal Procedure is not intended to be as broad as in a civil case." *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975) (citation and quotation omitted).

### (1) Rule 16

Federal Rule of Criminal Procedure 16 governs general discovery in criminal cases. *United States v. Armstrong*, 517 U.S. 456, 461 (1996). As relevant here, Rule 16 requires that the following materials must be disclosed by the Government upon the defendant's request: (1) the substance of the defendant's oral statement made in response to questioning by a government agent, if it will be used at trial; (2) the defendant's written or recorded statement; and (3) a copy of the defendant's prior criminal record. FED. R. CRIM. P. 16(a)(1)(A)-(B), (D). Upon request, the Government must also permit a defendant to inspect, copy or photograph "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" that are "within the government's possession, custody, or control" and (1) material to the preparation of the defense; (2) intended for use by the government as evidence in its case-in-chief at trial; or (3) obtained from or belonging to the defendant. FED. R. CRIM. P. 16(a)(1)(E). Rule 16 also requires the Government to permit discovery of reports of expert witnesses the "government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed." FED. R. CRIM. P. 16(a)(1)(F)-(G).

However, specifically exempted from disclosure under Rule 16 are: (1) the work product of Government attorneys and agents made in connection with the case's investigation or prosecution; (2) prospective government witness statements except as provided in 18 U.S.C. §

3500; and (3) grand jury transcripts except as provided by Federal Rules of Criminal Procedure 6, 12(h), 16(a)(1), and 26.2. FED. R. CRIM. P. 16(a)(2)-(3).

Moreover, "[t]he court, by order or local rule, must set a time for the government to make its disclosures. The time must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." FED. R. CRIM. P. 16(a)(1)(G)(ii). Nevertheless, Rule 16 leaves "the precise conditions under which the defense may obtain access to discoverable information to the informed discretion of the district court." *United States v. El-Mezain*, 664 F.3d 467, 520 (5th Cir. 2011) (quoting case omitted).

### (2) Witness Statements

#### (a) FRCP 6

To protect the secrecy of a grand jury, grand jury testimony is only discoverable when a particularized need is shown. FED. R. CRIM. P. 6(e). Recognized "instances of 'particularized need where the secrecy of the proceedings is lifted discretely and limitedly'" include impeaching a witness and refreshing a witness's recollection to test his credibility. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959) (quoting *United States v. Proctor & Gamble*, 356 U.S. 677, 683 (1958)). "The burden, however, is on the defense to show that 'a particularized need' exists for the [testimony] which outweighs the policy of secrecy." *Id.* at 400. Whether the defense establishes a need, and the disclosure of grand jury testimony is appropriate, is firmly "committed to the discretion of the trial judge." *Id.* at 399.

### (b) Jencks Act

Upon motion of the defendant, 18 U.S.C. § 3500 makes available to the defense a trial witness's pretrial statements insofar as they relate to his trial testimony on direct examination. *See* 18 U.S.C. § 3500(a)-(b) (finding that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case"; only after the Government witness has testified on direct examination and the defendant has so moved is the court required to "order the United States to produce any statement . . . of the witness" in its possession which relates to the subject matter of the witness's testimony); *see also* 18 U.S.C. § 3500(e) (defining "statement"). Although the Government has no obligation to disclose Jencks Act materials prior to a witness's direct examination testimony, it is local practice for the Government to do so at least one day prior to the witness's trial testimony.  *See* 18 U.S.C. 3500(b); *United States v. Neff*, No. 3:11-CR-0152-L, 2012 WL 6619385, at *2 (N.D. Tex. Dec. 18, 2012) (Lindsay, J.) (finding that the government need not disclose witness statements during pretrial discovery but may voluntarily do so).

### (c) Rule 26.2

Further, "[a]fter a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." FED. R. CRIM. P. 26.2(a). "Statement" is defined

4

as "(1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording; or (3) the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement." FED. R. CRIM. P. 26.2(f).

### (3) FRE 404(b) Notice

Rule 404(b) generally prohibits evidence of a defendant's prior bad acts to prove his/her conformity with such acts. FED. R. EVID. 404(b)(1). However, if certain prerequisites are met, the rule allows a party to offer evidence of a person's "other crimes, wrongs, or acts" to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." To offer this information in a criminal case, a prosecutor must: (1) "provide reasonable notice of any such evidence that [it] intends to offer at trial, so that the defendant has a fair opportunity to meet it"; (2) "articulate in the notice the permitted purpose for which [it] intends to offer the evidence and the reasoning that supports the purpose"; and (3) "do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice." FED. R. EVID. 404(b)(2). To the extent authorized by this rule, a defendant may file a motion requesting that the prosecution provide notice of the evidence of his/her prior bad acts which it intends to introduce at trial. *See, e.g.*, *United States v. Murrell*, No. 3:06-CR-160-G, 2006 WL 2092427, at *1 (N.D. Tex. July 26, 2006) (Fish, C.J.).

### (4) *Brady* and *Giglio*

The requirement of disclosure under *Brady v. Maryland* is a constitutional mandate which seeks to guarantee fair criminal trials by requiring the prosecution to disclose all material exculpatory and impeaching evidence regardless of whether a defendant requests it. *See Brady v. Maryland*, 373 U.S. 83, 86-87 (1963) (defining exculpatory evidence as evidence that is both favorable to the accused and "material either to guilt or to punishment."); *United States v. Bagley*, 473 U.S. 667, 682 (1985) (stating that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."). Moreover, it is the duty of the prosecution "to learn of any favorable evidence known to the others acting on the government's behalf …, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). The Government is also is required to produce impeachment evidence or evidence which shows a prosecution witness's bias or interest and thereby affects the credibility of the witness's testimony. *Giglio*, 405 U.S. at 153-55 (applying *Brady* to evidence affecting the credibility of key government witnesses).

However, the Constitution does not create a general discovery right for trial preparation or plea negotiations in criminal cases. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case"); *United States v. McKinney*, 758 F.2d 1036, 1049-50 (5th Cir. 1985) (declining to rule that *Brady* requires the government to turn over evidence prior to trial). As such, the government is only required to turn over material evidence "in time to put it to effective use at trial." *McKinney*, 758 F.2d at 1050. *See also United States v. Martinez-Perez*, 941 F.2d 295, 301 (5th Cir. 1991) (finding that

6

there is no violation of *Giglio* when the evidence is disclosed to the defense before the end of the trial).

## B. ANALYSIS

As is relevant here, the Court's initial Pretrial Order required that "[b]y January 11, 2019, the Government … provide full discovery to each defendant in accordance with FED. R. CRIM. P. 16(a) … [and], in accordance with *Brady v. Maryland*, 373 U.S. 83 (1963), provide each defendant with all of the exculpatory evidence it possesses concerning that defendant." Doc. 61 at 2. The Court also ordered the Government to "provide each defendant with all Jencks Act material (18 U.S.C. § 3500) on the day prior to the testimony of the witness to whom such material relates." Doc. 61 at 2.

### (1) Grand Jury Transcripts

The Owner Defendants argue that since the Court granted the Government's unopposed motion to disclose "any grand jury testimony of defendants in this case, and/or testifying witnesses pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(1)," the Government has "produced to the Owner Defendants a single grand jury transcript, of a defendant who appears to have been called before the grand jury for the sole purpose of having him assert his Fifth Amendment right against self-incrimination." Doc. 604 at 6 (citing Doc. 555 & Doc. 556). The Owner Defendants further contend that they requested in writing "the transcripts of each individual who appeared before the grand jury, including, but not limited to, those cooperating witnesses and Defendants named in the Motion," to which the Government responded, as it does in response to the instant motion, "that it had complied with the Court's order and would not produce any further grand jury testimony unless it expected that witness to testify at trial as

required by the Jencks Act." Doc. 604 at 7. The Government responds that Defendants "fail to articulate any particularized need for grand jury materials beyond those already produced pursuant to Court order." Doc. 616 at 7. The Government is correct.

While Defendants complain that they have received only "a single grand jury transcript" of one Defendant, they do not aver that any of the other Movant-Defendants appeared before the grand jury. And as able counsel for Defendants are no doubt aware, a defendant is only entitled to pretrial discovery of his own grand jury testimony, *see* FED. R. CRIM. P. 16(a)(1)(B), and the testimony of other witnesses is to be produced under the Jencks Act pursuant the Court's Pretrial Order "on the day prior to the testimony of the witness to whom such material relates," *see* Doc. 61 at 2; FED. R. CRIM. P. 26.2(f). In all other respects, "[g]rand jury minutes should be made available only where, on the facts of a particular case, the interest of justice requires disclosure. A defendant is therefore required to make a particularized showing of need before disclosure may be granted." *Posey v. United States*, 416 F.2d 545, 557 (5th Cir. 1969) (citations omitted).

Specifically, "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations…." *Douglas Oil Co. of California v. Petrol Stops Nw*., 441 U.S. 211, 222 (1979). Moreover, "[a]s noted in *United States v. Procter & Gamble Co*., 356 U.S. [677,] 683 . . ., the typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his

8

recollection, to test his credibility and the like.' Such use is necessary to avoid misleading the trier of fact." *Id.* at n.12.

Here, the Court's Pretrial Order provides the timeline for the production of grand jury transcripts for the purposes outlined in *Procter & Gamble*. And upon review of Defendants' stated bases for seeking revelation of additional grand jury transcripts, Doc. 604 at 10-16, the Court finds that Defendants have failed to demonstrate a particularized need for any grand jury transcripts otherwise. Accordingly, Defendants' motion to compel is **DENIED** in this regard.

### (2) Agents' Notes

Basically, Defendants seek copies of or, in the alternative, the Court's *in camera* inspection of, the case agents notes of interviews conducted in this case to determine if they contain *Brady* or *Giglio* information. Doc. 604 at 16-17. While acknowledging "that agent notes are not ordinarily discoverable in the general course," Defendants complain that "the interview memoranda provided by the government are surprisingly terse and frustratingly devoid of any meaningful content." Doc. 604 at 17. The Government responds that it "has produced over 300 reports of interview … out of abundance of caution, going beyond its obligations, even though an agent's report of an interview is not a statement of the interviewed witness unless that witness adopts or approves it." Doc. 616 at 11. The Government further argues that "the interview reports have been and will continue to be produced. Defendants have not put forth any argument to warrant disclosure of the underlying agent notes." Doc. 616 at 13.

As Defendants aver, and the Court agrees, the Government should be well aware of its obligations to "disclose any agent notes to the extent required to do so by *Brady* or *Giglio*." Doc. 604 at 16. Moreover, Defendants offer no basis to conclude that the Government has failed to do

9

so.  Neither have Defendants cited any applicable legal or factual basis requiring the wholesale production of agents' notes or the Court's *in camera* inspection of the same.  Defendants' argument for production is supported by mere speculation, as demonstrated by the Government's retort to the limited factual assumptions.  Further, the cases Defendants cite are easily distinguished.

In *United States v. Brown*, 303 F.3d 582, 591 (5th Cir. 2002), the defendant appealed the denial of his request for the handwritten notes of the agent's interview with him prior to his trial on the charge of making false statements to the agent.  *Id.* at 589.  Brown argued "he was entitled to the notes as a matter of law under Federal Rules of Criminal Procedure 16(a)(1)(A) and (a)(1)(C) and the Jencks Act, 18 U.S.C. § 3500… [and] that nondisclosure of the notes denied him the right to a fair trial in violation of *Brady v. Maryland*." *Id.*  While the district court conducted an *in camera* review of the notes, it denied Brown's request for the material, which decision the appellate court affirmed.  In this instance, Defendants seek the agents' notes neither as the memorialization of statements made by *Defendants* nor as the agents' own statements, which are (?) to be produced pursuant to the Jencks Act and the Court's Pretrial Order as discussed *supra*.  Moreover, nothing in *Brown* suggests that the Court is obligated to undertake *in camera* review of agents' notes.  The same is true of the opinion in *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993).  The Court notes that the district court's review of notes/302s in both *Brown* and *Williams* was limited, unlike the general request made here.

Thus, to the extent Defendants generally suggest that the agents' notes may contain information requiring production under *Brady* or *Giglio*, the Court declines to do so based on Defendants' mere speculation.  Defendants' motion to compel is **DENIED** in this regard.

### (3) Plea Agreement Supplements

Defendants seek "disclosure of all documents and information relating to evidence of cooperating witnesses' and alleged co-conspirators' criminal activity and bias, including sealed sentencing materials." Doc. 604 at 18. Specifically, Defendants seek the plea agreements and plea agreement supplements of co-defendants/co-conspirators the Government has previously indicated may be called as witnesses in the trial of this case. Doc. 604 at 19. The Government avers:

> To the extent defendants' motion requests that the government comply with its discovery obligations, including Giglio and its progeny, the government has done so and will continue to do so. Indeed, the government sought and obtained approval to disclose cooperating witnesses' plea agreement supplements (Dkt. 555), and has produced and will continue to produce other discovery pursuant to its obligations, including but not limited to: proffer agreements (e.g., Production 19 made to defense counsel on July 23, 2021), interview reports (e.g. Production 1 made to defense counsel on May 3, 2019), and sentencing materials (e.g., Production 23 made to defense counsel on *September 12, 2022*).

Doc. 616 at 14 (emphasis added); *see also id.* at n.3 (explaining that Defendants "misconstrue" the Government's position by quoting out of context the Government's response to a discovery motion filed by a non-movant Defendant).

As the Government does not contest its obligation to provide the plea agreements and plea agreement supplements of co-defendants/co-conspirators whom the Government anticipates calling as witnesses in the trial of this case and, albeit after the filing of the instant motion, actually produced those documents and others to Defendants, Defendants' motion to compel is **DENIED AS MOOT** in this regard.[1]

---

[1] The Court reminds the Government of its ongoing duty to comply with its obligations under *Brady*, *Giglio*, and their progeny.

11

### (4) Filter Team Policies and Procedures

Defendants aver that the Government has not responded to their requests for "information related to the protocol that governs its filter process" in regard to potential privileged information seized during the execution of search warrants in this case. Doc. 604 at 21. Defendants argue that

> in this same Court, with this same judge, the prosecution team—led by the same prosecutor as in this case—moved for the adoption of an unopposed filter team protocol, which the court granted. *United States v. Canchola*, Crim. No. 3:19-CR-473-S, ECF 64; ECF 65 (N.D. Tex. 2020) (granting government's unopposed motion for a filter team protocol with several procedural safeguards). The government has offered no basis to distinguish *Canchola* from this case: there is none.

Doc. 604 at 21-22 (emphasis omitted).

The Government counters that the circumstances in *Canchola* are distinct from those here, as it "implicated multiple privilege holders, making conflicting privilege assertions, across multiple genetic testing cases in multiple jurisdictions that already were governed by similar discovery protocols." Doc. 616 at 19. The Government goes on to describe the "well-disclosed filter team process" utilized in this case thusly:

> In particular, the filter team reviewed records for potentially protected material upon applying objective keyword search terms, the potentially protected material was produced to the relevant privilege holders for assertion, the privilege holders produced privilege logs over the asserted material, and the filter team raised any disputes regarding the privilege assertions to the Court's attention.

Doc. 616 at 19-20. The Government suggests that any further information regarding the filter team process is protected from disclosure as Government counsel's work product. Doc. 616 at 20.

The Court agrees with the Government that the circumstances of this case are markedly different than those in *Canchola*, starting with the fact that the materials in question here were

12

seized pursuant to a search warrant executed nearly six years before Defendants filed the instant motion . Additionally, the Court takes judicial notice of the extensive discussions of filter team's processes during hearings held before the undersigned and in related pleadings. *See, e.g.*, Doc. 253 at 8 ("[T]he filter team was specifically created to serve as a firewall, segregating any potentially protected communications from the prosecution team"). Moreover, Defendants proffer no facts from which the Court can glean a legitimate basis for suspecting that the filter team has not operated as expected or that the prosecution team has accessed potentially privileged information.

Accordingly, Defendants' motion is **DENIED** in this regard.

### (5) Request for a Rule 5(f) Order

Finally, Defendants seek an order under Rule 5(f). Federal Rule of Criminal Procedure 5, which governs initial appearances, was amended in October 2020 by the Due Process Protections Act to provide as applicable here:

> In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law.

FED. R. CRIM. P. 5(f)(1). The amended rule does not provide that it is retroactive.

Defendants' initial appearances were held on December 18, 2018—more than two years before the enactment of Rule 5(f)(1)—at which time attorneys for each party were present. Thus, despite Defendants' assertion that "[t]his Court has not yet had an opportunity to issue a DPPA order in this case," and the Government's lack of objection to doing so now, the provisions of Rule 5(f)(1) do not apply. Defendant's motion to compel is therefore **DENIED** in

13

this respect. Nevertheless, to the extent that the Government and its counsel need reminding of their disclosure obligations under *Brady* and its progeny, consider this it![2]

**C. CONCLUSION**

For the foregoing reasons, the *Owner Defendants' Motion to Compel Production of Discovery and Motion for Order Under the Due Process Protections Act*, Doc. 604, is **DENIED**.

**SO ORDERED** on April 11, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[2] Failure to comply may result in the dismissal of charges, exclusion of evidence, adverse jury instructions, contempt proceedings, and other appropriate sanctions.