## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:18-CR-00623 (S) |
| | § | |
| RICHARD HALL (01) | § | |
| | § | |

**DEFENDANT RICHARD HALL'S MOTION FOR RELEASE PENDING APPEAL**

Defendant Richard Hall, through undersigned counsel, moves the Court under 18 U.S.C. § 3143(b) for release pending his appeal to the United States Court of Appeals for the Fifth Circuit. Hall is not a flight risk or a danger to the community; his appeal is not for purposes of delay; and his appeal will raise substantial questions of law that, if decided in his favor, will result in reversal on all counts of conviction.

### ARGUMENT

Under the Bail Reform Act of 1984, the district court must release a defendant pending appeal if it makes four findings.  First, the court must find that the defendant will not flee or pose a danger to the community if the court grants bail.  *See* 18 U.S.C. § 3143(b)(1)(A).  Second, the court must find that "the appeal is not for the purpose of delay."  *Id*. § 3143(b)(1)(B).  Third, the court must find that the appeal "raises a substantial question of law or fact."  *Id*.  Fourth, the court must find that the substantial question, if decided in defendant's favor, is "likely to result in" reversal, an order for a new trial, or a sentence shorter than time already served plus the duration of the appellate process.  *Id*.; *see, e.g., United States v. Valera-Elizondo*, 761 F.2d 1020, 1023-25 (5th Cir. 1985); *United States v. Jordan*, 2022 U.S. Dist. LEXIS 167750 (E.D. Tex. Sept. 16, 2022)

(applying this standard and granting release pending appeal); *United States v. Manners*, 2009 U.S. Dist. LEXIS 4605 (N.D. Tex. Jan. 22, 2009) (Lynn, J.) (same).

Because Hall satisfies each of these requirements, the Court should release him pending appeal on his current conditions.

## I.       FLIGHT RISK AND DANGER.

Hall has shown since his indictment in 2018 that he is neither a flight risk nor a danger to the community.  He has complied with all conditions of release and made every court appearance. Other than the charges in this case, he has never been in trouble with the law.  He has deep ties to the Fort Worth community, where he has lived and done business almost his entire life.  The letters accompanying the sentencing memorandum confirm his exemplary personal qualities.  The Court can be confident that if it leaves Hall on release until his appeal is decided, he will continue to comply with his release conditions and, if the appeal is unsuccessful, he will report to prison as directed.

## II.      DELAY.

Hall's appeal is not for purposes of delay.  As discussed below, he will present significant issues to the court of appeals.  And he will present those issues expeditiously.

## III.     SUBSTANTIAL QUESTION.

Hall will present at least three substantial questions on appeal.

### A.       The Legal Standard.

The Fifth Circuit has defined a "substantial question" as "'a close question or one that very well could be decided the other way.'"  *Valera-Elizondo*, 761 F.2d at 1024 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).  Although the absence of controlling precedent

on the question is not alone determinative, it is a factor to be considered in making the "substantial question" determination.  *See id*.

The Fifth Circuit has made clear that the "substantial question" standard "'cannot be read as meaning . . . that the district court must conclude that its own order is likely to be reversed.'" *Id*. at 1022 (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)).  Other courts of appeals agree.  *See, e.g., United States v. Thompson*, 787 F.2d 1084, 1085 (7th Cir. 1986) (per curiam) ("[A] judge need not find that he should have ruled the other way, *i.e.*, that he probably will be reversed, in order to find that an issue is 'substantial.'"); *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985) (the "substantial question" standard "does not require the district court to find that it committed reversible error").  As the Seventh Circuit explained, "it would have been capricious of Congress to have conditioned bail only on the willingness of a trial judge to certify his or her own error."  *United States v. Bilanzich*, 771 F.2d 292, 299 (7th Cir. 1985) (quotation omitted); *see, e.g., United States v. Giancola*, 754 F.2d 898, 900 (11th Cir. 1985) ("We . . . are unwilling to attribute to Congress the intention to deny bail pending appeal unless a district court judge found that he or she had committed error but was obstinately unwilling to grant a new trial or other relief to correct the error.").

### B.     The Substantial Questions Presented Here.

Hall's appeal will present at least three questions that are, at a minimum, "close."  Because we have briefed and argued these issues in detail previously, we merely summarize them here.

### 1.     Burden of Persuasion on Employee Safe Harbor.--There is no more

critical issue in a criminal case than the burden of proof.  It is so central that the Supreme Court has held that an erroneous reasonable doubt instruction warrants automatic reversal, without an inquiry into harmless error.  *Sullivan v. Louisiana*, 508 U.S. 275 (1993).

Here, the dispute centered on an even more fundamental issue than *Sullivan* addressed: which party had the burden of persuasion on the marketers' status as bona fide employees of Xpress.  Hall maintained that the employee safe harbor placed the burden of persuasion on the government once he met his burden of production--which the Court found he had done.  T. 7/25/23 at 18.  He proposed a jury instruction requiring the government to prove beyond a reasonable doubt that the marketers were not bona fide employees.  Doc. 902 at 11.  The Court rejected the defense instruction, T. 7/25/23 at 18, and instructed the jury that Hall had the burden of proof on the bona fide employee issue by a preponderance of the evidence, Doc. 941 at 7.

Hall has explained in detail (Docs. 793, 934) why, in his view, the government had the burden of persuasion on the bona fide employee question, just as it does on affirmative defenses such as entrapment and self-defense.  *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) (2019 ed.), Instructions 1.30 (entrapment), 1.39 (self-defense).  To summarize, when an affirmative defense tends to negate an element of the offense, the burden of persuasion must rest on the government.  *See, e.g., United States v. Shamsid-Deen*, 61 F.4th 935, 997 (11th Cir. 2023); *United States v. Kloess*, 251 F.3d 941, 947 (11th Cir. 2001).  The employee safe-harbor does exactly that:  it tends to negate the "remuneration" element of the AKS offense.  *See United States v. Job*, 387 Fed. Appx. 445, 455 (5th Cir. 2010) (unpublished) ("The [employee] safe-harbor provision modifies the definition of 'remuneration' to exclude payments to *bona fide* employees."); 42 C.F.R. § 1001.952(i) ("As used in [the AKS], 'remuneration' does not include any amount paid by an employer to an employee, who has a bona fide employment relationship with the employer, for employment in the furnishing of any item or service for which payment may be made in whole or in part under [a Federal health care program].").

If there were doubt on this point, the Supreme Court removed it two years ago in *Ruan v. United States*, 142 S. Ct. 2370 (2022).  *Ruan* involved 21 U.S.C. § 841(a), which prohibits distribution of controlled substances "[e]xcept as authorized."  The Court described the effect of the "[e]xcept as authorized" provision as follows:  "This means that once a defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner."  142 S. Ct. at 2376; *see id*. at 2380-81 (same).

The *Ruan* approach to the burden of persuasion applies equally to the bona fide employee safe harbor.  Just as the "[e]xcept as authorized" provision provides an exception to the general prohibition in 21 U.S.C. § 841(a), the bona fide employee safe harbor provides that "illegal remunerations" provisions of the AKS "shall not apply" to "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services."  42 U.S.C. § 1320a-7b(b)(3)(B).  And just as the "[e]xcept as authorized" provision places the burden of persuasion on the government, so does the employee safe harbor.

The Fifth Circuit cases that have addressed the burden of proof on AKS safe harbors have focused on the burden of production--which indisputably rests on the defendant--rather than on the burden of persuasion.  *See, e.g., United States v. Hagen*, 60 F.4th 932, 947-48 (5th Cir. 2023); *United States v. Nowlin*, 640 Fed. Appx. 337, 344-45 (5th Cir. 2016) (unpublished);  *United States v. Turner*, 561 Fed. Appx. 312, 319-20 (5th Cir. 2014) (unpublished); *Job*, 387 Fed. Appx. at 455. None of those case has considered the effect of *Ruan* on the burden of persuasion.  That is an open, and vitally important, question in this Circuit and others.

The burden of persuasion issue, at a minimum, presents "a close question or one that very well could be decided the other way."  *Valera-Elizondo*, 761 F.2d at 1024 (quotation omitted).

      2.      **Definition of "Employee."--**The definition of "employee" for purposes of the bona fide employee safe harbor presents a second "substantial question."  Hall requested an instruction based on the applicable IRS regulation, 26 C.F.R. § 31.3121(d)-1(c).  Doc. 902 at 11.[1] The proposed instruction focused on the employer's right to control and direct the employee both as to what shall be done and as to how it shall be done.  The defense instruction added, in keeping with the IRS regulation, that "it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if it has the right to do so."  And the instruction stated that "[t]he right to discharge is also an important factor indicating that the company possessing that right is an employer."  *Id.*

      Over defense objection, T. 7/25/23 at 13-14, the Court rejected the defense instruction and gave instead an instruction that listed thirteen factors, "among other things," for the jury to consider in determining whether Hall had met the burden of persuasion the Court's instruction placed on him.  Doc. 941 at 7-8.

      We expect to argue on appeal that the Court's instruction was erroneous in at least three key respects.  First, although it included "the hiring party's right to control the manner and means of the work performed," it merely listed that right as one of thirteen factors for the jury to consider, among others, without providing any guidance on what weight those factors should receive.  *Cf. Vanderstock v. Garland*, 86 F.4th 179, 209 (5th Cir. 2023) (Oldham, J., concurring) (regulation purporting to define term "readily" that listed eight non-exclusive factors with no explanation of

---

[1] The IRS regulation is important because 42 C.F.R. § 1001.952(i), an HHS regulation interpreting the AKS, refers to 26 U.S.C. § 3121(d)(2) for the definition of "employee."  26 C.F.R. § 31.3121(d)-1(c), in turn, interprets § 3121(d)(2).

how to balance them "provides no guidance to anyone and hence is void for vagueness"); *id*. at 193 n.19 (majority opinion notes appellees' "well-reasoned arguments regarding the ambiguity and vagueness" of the "subjective multi-factor test" used to define "readily").   Under the IRS regulation, the right to control is the key to the employer-employee relationship.  The other factors the Court listed--"the skill required," "the source of the instrumentalities and tools," "the duration of the relationship between the parties," and so on--are relevant in deciding whether the employer has the right to control the employee, but it is the right to control that determines the nature of the relationship.[2]

Second, the Court's instruction omitted the critical point that it is the *right* to control that matters, not the *exercise* of that right.  It was essential for the jury to understand this distinction, given the testimony that Hall only occasionally exercised his authority over the marketers.[3]

Third, the Court's instruction omitted from the list of factors for the jury to consider the "right to discharge," which the IRS regulation identified as an "important factor."  The absence of

---

[2] The legal memoranda introduced into evidence, reflecting the legal advice Hall received at the time, support this view.  GX 422, the January 13, 2014 memorandum from Bryon Hammer at the Bourland firm, states that "[w]hether a worker is a 'bona-fide employee' is based on 'the hiring party's right to control the manner and means by which the [work] is accomplished,' which is determined by considering the following factors,'" folowed by a list including some of the factors in the Court's instruction.  GX 422 at 2 (quoting *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24 (1992)).  GX 902, the December 29, 2013 K&L Gates memorandum, similarly states (quoting an IRS regulation):  "Generally, such [an employer-employee] relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which the result is accomplished."  GX 902 at 6.  The memorandum continues, "Previously, the IRS relied on the following twenty-factor list to determine whether a business retained sufficient direction and control over a worker to classify the worker as an employee instead of as an independent contractor," followed by a list that includes some of the factors included in the Court's instruction.  *Id*. at 6-7.

[3] The January 13, 2014 Hammer memorandum included this point.  GX 422 at 1 ("The business does not have to actually direct or control the way the work is done--as long as the employer has the right to direct and control the work.").

the right to discharge from the Court's instruction was especially damaging to the defense, because Hall testified that it was his right to fire the marketers--a right he exercised in several instances--that was a big factor leading him to believe they were employees.  T. 7/24/23 at 87.[4]

The Court's definition of "employee," like the burden of persuasion on the employee safe harbor, presents at least "a close question or one that very well could be decided the other way." *Valera-Elizondo*, 761 F.2d at 1024 (quotation omitted).

**3.     Admission of Cooperators' Pleas and Convictions.--**The defense moved before trial to exclude evidence of the cooperating witnesses' guilty pleas and convictions.  Docs. 754, 838, 891.  Hall certified that if this evidence were excluded, he would not attempt to impeach the cooperating witnesses with their pleas or convictions.  *E.g.*, Doc. 754 at 1; Doc. 838 at 2; Doc. 891 at 6.  The defense noted that (1) under long-standing Fifth Circuit law, it is error--indeed, plain error--to admit evidence of an alleged co-conspirator's plea and conviction, unless the record reflects a defensive strategy that relies on the co-conspirator's guilt--a strategy Hall expressly disclaimed, *see, e.g., United States v. Leach*, 918 F.2d 464, 467 (5th Cir. 1990); *United States v. Fleetwood*, 528 F.2d 528, 533-35 (5th Cir. 1976), and (2) at least two district judges in the Fifth Circuit--Judge Lynn of this Court and Judge Duval of the Eastern District of Louisiana--have excluded such evidence when the defense unequivocally renounced any impeachment by use of the plea and conviction, Doc. 754 at 5 (citing cases).

The Court denied the defense motion.  Doc. 901.  Over continuing objection, T. 7/18/23 at 79-80; T. 7/19/23 at 30, the government elicited from each of its cooperators, on direct examination, that they had pled guilty to one or more of the same crimes with which Hall was

---

[4] The December 29, 2013 K&L Gates memorandum included "[e]mployer's right to discharge worker" as a factor in determining whether the employer had the right to control that is key to an employer-employee relationship.  GX 902 at 6.

charged, T. 7/18/23 at 80-81 (Schuster's plea to conspiracy to defraud the United States and violation of the AKS); T. 7/19/23 at 238-39 (Ranelle's plea to conspiracy to defraud the United States and violation of the AKS); *id*. at 272 (Paret's plea to conspiracy to defraud the United States); T. 7/20/23 at 134-35 (Zeutzius' plea to conspiracy to defraud the United States and violation of the AKS); T. 7/21/23 at 15 (Le's plea to conspiracy to defraud the United States); *id*. at 72 (Rall's plea to Count 7, conspiracy to commit money laundering).   Thus, six out of eleven prosecution witnesses were permitted to testify on direct examination that they had pled guilty to one or more of the same crimes to which Hall had pled not guilty and elected to go to trial.

The Court permitted this testimony based in part on its reading of the Fifth Circuit's decision in *United States v. Mazkouri*, 945 F.3d 293, 301-02 (5th Cir. 2019).  Doc. 901 at 1-2.  As the defense explained, however, Doc. 891 at 3, the defense strategy in *Mazkouri* had (according to the government's brief) "focused on the witnesses' motives to lie as a result of their agreements with the government."  *United States v. Mazkouri*, No. 18-20650, Brief for the United States at 30; *see id*. at 12 ("The record makes clear that the convictions were admitted because defense counsel put their credibility at issue, and the government did not elicit testimony regarding those convictions as substantive evidence of Mazcuri's guilt.").  In such a circumstance, it is generally permissible for the prosecution to introduce evidence of a co-conspirator's guilty plea to draw the sting from a defense attack on his credibility based on his agreement with the government.  Here, however, the defense had expressly renounced any such defense strategy.

We accordingly expect to argue on appeal that *Mazkouri* is readily distinguishable; that evidence of the alleged co-conspirators' guilty pleas had little or no legitimate probative value; and that the prejudice to Hall from admitting such evidence as to more than half the government's witnesses could not be cured by a limiting instruction.  In the absence of a controlling decision

from the Fifth Circuit, we submit that the admission of this evidence presents, at the least, a "close question or one that could very well be decided the other way." *Valera-Elizondo*, 761 F.2d at 1024 (quotation omitted).

\* \* \* \*

The Court considered each of the issues outlined above carefully.  We have no doubt that the Court believes it ruled correctly in each instance.  But that is not the standard for release pending appeal; the Court must simply determine whether any of the issues Hall has identified presents "a close question or one that very well could be decided the other way." *Valera-Elizondo*, 761 F.2d at 1024.  We respectfully suggest that each of the questions satisfies that standard.

## IV.    LIKELY TO RESULT IN REVERSAL OR A NEW TRIAL.

Finally, the Court must determine whether the substantial questions, if decided in Hall's favor, are "likely to result in" reversal or a new trial.  18 U.S.C. § 3143(b)(1)(B).  To meet this requirement, the questions at issue must be "'so integral to the merits of the conviction . . . that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'"  *Valera-Elizondo*, 761 F.2d at 1024 (quoting *Miller*, 753 F.2d at 23).

The substantial questions outlined above meet this standard.  Each of those questions, if resolved in Hall's favor, will lead to reversal of his conviction on all counts.  The safe harbor burden of persuasion and employee definition issues bear most directly on the AKS counts (Counts 2, 3, 4, and 5).  Those counts, in turn, provide the source of the "proceeds" alleged in the money laundering conspiracy count (Count 7).  *See* Doc. 941 (final jury instructions) at 10 (identifying source of "proceeds" as "paying or receiving illegal health care kickbacks").  Accordingly, if Hall prevails on either or both of those substantial questions, that will "likely . . . require reversal of the

10

conviction [and] a new trial" on all counts of conviction.  *Valera-Elizondo*, 761 F.2d at 1024 (quotation omitted).

The third substantial question discussed above--the admission of the cooperators' pleas--would likewise require reversal and a new trial on all counts if decided in Hall's favor.  That is because the witnesses whose pleas the government was permitted to introduce--Schuster, Ranelle, Paret, Zeutzius, Le, and Rall--were the key witnesses against Hall on every count.  If the court of appeals finds error in admitting evidence of their pleas, Hall's conviction cannot stand.

## CONCLUSION

For the foregoing reasons, the Court should permit Hall to remain on his current conditions of release until the court of appeals decides his appeal.

Dated:  February 19, 2024

Respectfully submitted,

/s/ Marlo P. Cadeddu
**Law Office of Marlo P. Cadeddu, P.C.**
State Bar No. 24028839
mc@marlocadeddu.com
2911 Turtle Creek Blvd., Suite 300-390
Dallas, TX 75219
Tel. & Fax: (214) 220-9000


/s/ John D. Cline
**Law Office of John D. Cline**
CA Bar No. 237759
cline@johndclinelaw.com
600 Stewart Street, Suite 400
Seattle, WA 98101
Tel.: (360) 320-6435


**ATTORNEYS FOR RICHARD HALL**

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Lee Hirsch, counsel for the government, on February

15, 2024 regarding this motion.  The government opposes the motion.

   /s/   John D. Cline       
John D. Cline
